H. MILLER, ASSIGNEE, v. THE WIDOW AND HEIRS OF THEODORE MENKE.

(Case No. 1319.)

1. URBAN HOMESTEAD EXEMPTION — PLACE OF BUSINESS.— Under the present constitution the urban homestead exemption embraces not only the lots on which is the residence of the family, but, in addi-

tion thereto, the lot or lots where the head of the family exercises his calling or business, although the latter be not contiguous to the former, but entirely detached and separate therefrom.

2. EXEMPTION OF PLACE OF BUSINESS — HOW KEPT ALIVE.—When so detached from the residence, the exemption of the lots used as a place of business can only be kept up by the continued use thereof. An abandonment of their use as a place of business terminates the exemption of those lots, notwithstanding the lots on which the home of the family may stand may still be used as a home. In this respect the urban and rural homestead differ.

NOTE.— The record in this case was destroyed by fire at Galveston, and the statement of the case is taken from appellant's brief, the correctness of which was admitted.    The importance of the question involved will explain the liberal extracts made from the briefs.

APPEAL from Austin county.

H. Miller was appointed assignee of the estate of Theodore Menke (since deceased), by deed of assignment for the benefit of creditors, made December 2, 1880, conveying to him all the property of Menke not exempt from forced sale under the constitution and laws of the state.    He sued to subject lots 4 and 5, in block F, in the town of Belleville, Austin county, as assets of the estate conveyed to him by the assignment, for the purpose of distribution among the creditors of Menke.    The surviving wife and child of Menke claimed the property as homestead.    The judgment of the district court was in their favor as follows: "The said lots 4 and 5, in block F, in the town of Belleville, together with the improvements thereon, are, under the constitution and laws of Texas, a part of the homestead of the said Theodore Menké, and were such at the date of the assignment on, to wit, December 2, 1880, and as such did not pass to and vest in the assignee, H. Miller, by virtue of said assignment, and that the same belongs to the family of said Theodore Menke, now deceased, as a part of the homestead of said decedent."

From this judgment Miller appealed.

Theodore Menke, at the time of making the assign-
ment, and at the time of his death, was a married man
and the head of a family, having his residence and place
of business in the town of Belleville, Austin county.
Belleville is regularly laid off into blocks and lots. At
the date of the assignment, and for several years pre-
vious, Menke owned lots 4 and 5, fronting on the public
or court house square, and did business as a merchant in
a store situated on the same. During this time, and at
the date of his death, Menke owned and resided with his
family on out-lots 2 and 3, in the town of Belleville, some
eighty or ninety yards from the court house square, on a
street leading thereto and entirely disconnected from
the store-house lots; said residence lots containing a gar-
den, stable, and other usual appendages of a dwelling.
Shortly before making the assignment Menke erected a
brick store on the lots 4 and 5, in close proximity to the
store he was then using; and after the completion of the
brick building he transferred his business and most of
his goods into it, and was doing business there at the date
of the assignment and for several weeks previous. A
portion of the goods were left in the old store, and it
continued to be used as a warehouse in connection with
the new store up to the date of the assignment. The
old and new buildings each cover portions of both lots.

Menke's sole business was that of a merchant, and was
conducted entirely on said lots 4 and 5.

His residence above named was used for the purpose of
a home for himself and family.

All of the lots of ground mentioned always have been,
without reference to the value of improvements, of less
value than $5,000.

The following plot shows the relative location of the
lots:

The question involved was: Whether lots 4 and 5, in block F, constitute a part of the homestead of Theodore Menke and family under the provisions of sec. 51, art. XVI of the constitution.

*Street & Kleberg,* for appellant.

The first proviso in sec. 51, art. XVI of the constitution, defining the homestead of a family in a town, village or city, in the words following: "*provided,* that, the same shall be used for the purpose of a home, or as a place to exercise the calling or business of the head of a family," neither restricts or enlarges the homestead exemption of "lot or lots, not to exceed in value $5,000 at the time of their designation as homestead, without reference to the value of any improvements thereon," but requires (subject to the qualification as to temporary renting in the second proviso) that use either as a home or as a place of business shall alone constitute designation within the meaning of the constitution.

It prescribes, disjunctively, alternative conditions or status of the subject matter, one or the other of which must exist.

Subject to the qualification as to temporary renting, there can be no homestead unless the same shall be "used for the purposes of a home, or as a place to exercise the calling or business of the head of a family."

The exemption is not of a home and a place of business, but of a homestead to consist of lot or lots, which may be used for either purpose and must be used for one or the other.

The language used is appropriate to convey this intention and no other.

The designation required under this proviso will be found to be one of the most important, if not the most important, distinction between the homestead provision of the present and former constitutions.

The constitution of 1845, so far as applicable to the character of case under consideration, reads: "The homestead of a family —— any town or city lot or lots in value not to exceed," etc. In the constitution of 1870 it was sought to make the exemption more definite, more easily susceptible of ascertainment, by adding after "in value not to exceed," etc., the words, "at the time of their destination as a homestead, and without reference to the value of any improvements thereon."

It was still, however, thought reasonable ground of complaint that the terms of the constitution failed to prescribe the *indicia* of homestead, and left so important an element *vexata questio.*

The convention of 1876, responding to this demand, has declared that designation shall be by one or the other of certain uses named; and in so doing it has wisely imported into the terms of the law the interpretation which previous constitutional provisions of the same general character had received from our supreme court in a long line of cases — an interpretation with which the professional mind was already becoming familiar, and one not intended now to be remitted to the realm of uncertainty but definitively to be perpetuated by express constitutional sanction.

In Hancock *v.* Morgan, 17 Tex., 585, the exempt homestead was only a single town lot of less value than $2,000.

In Pryor *v.* Stone, 19 Tex., 371, "the only property sold was the one lot on the public square," and the court say, "one room was occupied by the plaintiff (head of the family) as his bed-room; the depository of family portraits and remaining furniture. To this extent it was his actual residence, and its claim, as such, to exemption cannot be questioned."

In Evans *v.* Womack, 48 Tex., 230, the eleven acres claimed as a part of the homestead were situated in the town with the residence lot, separated therefrom by in-

tervening streets and lots, as in this case, and were culti-
vated. The court say: "This did not make it a part of the
homestead, . . . though had it been a garden, or
horse-lot, used in connection with the residence, as such
appendages are commonly used in a town, its separation
from the residence by a street would not have prevented
it from being a part of the homestead."

The principle of the case of Iken & Co. v. Olenick, 42
Tex., 195, is applicable to, and decisive of, the case at bar
in favor of appellant.

_Chesley & Haggerty_, for appellees.

The point to be arrived at is the intention of the
framers of the constitution.

In Pryor v. Stone, 19 Tex., 371, the court say the
homestead exemption includes a place where the head or
members may pursue such business as may be necessary
for the support of the family.

This principle was repeatedly referred to with approval
by this court in subsequent decisions, and came to be re-
garded by the profession as settled law. Moore v. Whitis,
30 Tex., 440; Ragland v. Rogers, 34 Tex., 617.

In 1875 the opinion of this court in the case of Iken & 
Co. v. Olenick was rendered, holding that all questions of
this character were to be determined by the use to which
the property in question was applied; that is, if it was the
lot or lots upon which was the residence or mansion
house, or if by its contiguity or use it contributed to the
convenience or enjoyment of the mansion, then it
formed a part of the homestead, otherwise not. 42
Tex., 201.

This decision, although based upon what we believe to
be sound reasoning, dispelled the idea prevailing at that
time in the mind of the people of Texas, that the place of
business of a head of a family formed a part of his
homestead.

In the following year, the constitutional convention assembled and changed the homestead provisions upon this point and no other, by adding the proviso, that ·'' the same (the urban homestead) shall be used for 'the purpose of a home, or a place to exercise the calling or business of a head of a family.''

This court had already decided (Iken & Co. *v.* Olenick) that the question of whether an urban lot formed a part of the homestead was to be determined by the use to which it was applied, and that the concrete idea of homestead did not include anything except the residence and such of· its surroundings as from their use or contiguity were necessary· to its enjoyment.

The first part of the constitutional proviso, viz., "that the same shall be used for the purposes of a home," expresses exactly the result of this decision, and then the proviso proceeds by adding, "or as a place to exercise the calling or business of the head of a·family," thereby indicating, as we submit, an intention to make the constitutional homestead the same it had been generally understood to be during the period of about eighteen years from the time of the decision of Pryor *v.* Stone, down to the time of the decision of Iken & Co. *v.* Olenick.

This court has never held that it was necessary that the homestead lots should be contiguous. It has always been deemed sufficient if the lots were in fact used for the purpose of a homestead. Hancock *v.* Morgan, 17 Tex., 582; Methery *v.* Walker, id., 593; Pryor *v.* Stone, 19 Tex., 373; Williams *v.* Hall, 33 Tex., 212; Iken & Co. *v.* Olenick, 42 Tex., 201; Evans *v.* Womack, 48 Tex., 232. .

Appellant's argument that "the exemption is not of a home and a place of business, but of a homestead to consist of lot or lots which may be used for either purpose, and must be used for one or the other," narrows the position into this:

1st. That the mechanic's shop or the business house of

the head of a family is exempt, provided he has no home; or,

2d. If he has both, then neither is exempt, or either the one or the other is exempt, according to circumstances, not defined in the constitution.

The vice in the argument is, that appellant seems to conceive of a homestead independent of its use, whereas the result of the constitutional provision is, that it is the use to which the lots are applied that makes them the homestead.

The use for either of the purposes named in the constitution is equally efficacious, and the assumption that the use for both purposes would destroy the homestead character and leave the head of the family without a home, or a place to exercise his calling or business, sufficiently refutes itself.

We submit as a proposition:

That the proviso in the constitution is simply descriptive of the property that shall form the homestead, and that all property that comes under either of the two classes described is a part of the homestead.

Also the minor propositions:

1st. That the word "or" in the proviso "that the same shall be used for the purposes of a home, *or* as a place to exercise the calling or business of the head of a family," is not used in a disjunctive sense, as claimed by appellant, but to connect with the previous sentence another class of property to be included in the homestead exemption.

The use of the conjunctive word *and* would have practically destroyed the value of the urban homestead, by requiring that the home, in order to be exempt, should also be the place of business.

We submit that the only alternative constructions of the proviso from that just indicated are:

1st. That the place of business is exempt provided the

party has no home; but this construction lands us into the opposite position, which is equally tenable, viz.: that the home is exempt provided the party has no place of business, for it will be noted that the constitution makes no distinction between the two classes of property.

2d. That where the head of a family has a place of business and a home, either of them is the homestead, but not both, in the determining of which both the creditors and the head of the family have an equal interest.

This, we submit, is a position so full of novelty, when associated with the ideas of certainty, permanency and sanctity, that are the usual concomitants of a homestead, and of practical difficulty in the details of ascertaining in a given case which shall be the homestead, that it will hardly be presumed to have been the intention of the framers of the constitution, in the absence of any declaration of such intention.

3d. That the word "homestead" *ex vi termini* means the place of the residence, and that the mechanic's shop or business house must be on that place to become a part of the homestead.

To this we reply that the constitution itself is, so far as Texas is concerned, a partial upsetting of the ordinary definition of homestead, and leaves us to some extent in a new field.

The question is, what is the intention of the framers of the constitution?

That the lots forming the homestead need not be contiguous has always been the ruling of this court. The only thing heretofore held to be necessary as a governing principle is, that they should be used for the comfort or enjoyment of a home, and in recent decisions it has been suggested that the purposes for which they are used should be so apparent as to be an *indicia* that they formed a part of the homestead.

Now, taking the same rule of determination heretofore

adopted, and it results that the place to exercise the calling or business of the head of a family must be ascertained like all other parts of the homestead, from the use to which it is applied, and that the locality in either case is unimportant only so far as it tends to throw light upon the purposes for which it is used.

To hold that the place of business is exempt as a part of the homestead only where it is at the place of residence is not demanded by the language used in the constitution, and would be manifestly subversive of public policy, by causing other considerations than success to enter into the question of the selection by the head of a family of a suitable locality for business pursuits.

MOORE, CHIEF JUSTICE.— The only question in this case depends for its solution upon the construction which should be given section 51, article XVI, of the constitution, defining an urban homestead. The part of the section of the constitution in question reads as follows: "The homestead in a city, town or village shall consist of lot or lots, not to exceed in value five thousand dollars at the time of their designation as the homestead, without reference to the value of any improvements thereon; *provided*, that the same shall be used for the purpose of a home, or as a place of exercising the calling or business of the head of a family."

Appellant claims that the proviso quoted neither restricts or enlarges the homestead exemption of the lot or lots previously referred to, but merely requires, to bring them within the exemption, that they must be used as a home or place of business. And that " the exemption is not of a home and place of business, but of a homestead to consist of lot or lots, which may be used for either purpose, and must be used for one or the other." This construction, it seems to us, would involve us in inextricable difficulty, or lead to results which would evidently

contravene the object sought to be secured by the constitution, as is manifest when considered in connection with the previous legislation and the decisions of this court.

Whether the policy of our legislation regarding the homestead exemption has been wise or unwise is not for us to say. It is, however, unquestionable, that from its first introduction there has been a uniform and steady tendency in the popular mind in favor of its liberalization and enlargement. And if the courts have not at all times responded to the popular sentiment upon the subject, they have been constrained to give way to it by more explicit legislation, or constitutional enactments. For example, no sooner was it manifest that the courts were inclined to construe the exemption in the constitution of 1845 as referable both to the lot and its improvements, than it was declared the improvements should not be considered in estimating the value of the exempted lots. And as we think, when it became apparent that this court did not regard the place of business of the head of the family, if entirely distinct and separate from their home, as within the exemption by reason of its use, then there was an enlargement of the homestead exemption as we find it in the present constitution. Iken & Co. v. Olenick, 42 Tex., 195.

In seeking to ascertain the extent or limit of the urban homestead which is exempted from forced sale, it is well to note that while the first clause of the section of the constitution under consideration declares that the homestead in a city, town or village shall consist of a lot or lots, not exceeding in value, etc., the particular lot or lots which shall constitute the homestead are only indicated or designated in the proviso. By it the homestead lot or lots are designated by the use made of them. That is, if the lots not exceeding in value $5,000 are used as a home or place of business, such lots are recognized as the constitutional homestead, and are exempted from forced

sales. The lots exempt include all used in the one way or the other, unless they together exceed the limit of value. The entire sentence as framed, in our opinion, clearly and properly expresses the intention. If the clause in the proviso had been connected by the conjunction *and*, as appellant seems to insist it should have been, to entitle it to the construction, it would, as we have said, have had an entirely different effect from what we think was intended, or lead to absurd results. In that case there would have been no exemption of an urban homestead, unless there were lots used both for a home and place of business. If there were both, there is nothing in the constitution to enable us to say whether it is the home or place of business intended to be exempted.

The judgment is affirmed.

AFFIRMED.

[Opinion delivered at January term, 1881.]

### ON MOTION FOR REHEARING.

*Street & Kleberg*, for appellant.

Although the opinion of the court would indicate that the construction to be given the clause of the constitution under consideration was circumscribed within the narrow limits of the grammatical relation of the terms used, and that those terms clearly and properly expressed the intention attributed by the court, yet we venture to say that this decision has been received by the profession with surprise and by the commercial public with consternation.

"If any lots throughout the city, which may have been used for any business purpose by the husband, thereby become part and parcel of the homestead, which cannot be reached by creditors, or alienated by the husband without being joined by the wife, it is needless to say that the security of those so dealing with the husband rests, to a

very great extent, on a moral rather than on any legal foundation." Iken v. Olenick, 42 Tex., 195.

It is not to be denied that what the court has now declared a part of the homestead has been hitherto regarded as "gilt-edge" security, has been habitually sold under execution, sold under deeds of trust, and sold by the husband at private sale without the joining of the wife, unquestioned and unchallenged.

In the Alabama woman's case — Henderson v. Ford, 46 Tex., 628, — the present learned chief justice, delivering the opinion of the court, says:

"The only remaining objection to appellee's right to a judgment is her removal from the state after Bohannan's death and subsequent marriage to her present husband. If the views which I heretofore entertained with reference to the homestead right as contemplated and intended to be secured by the constitution and laws of this state to the heads of families, and surviving constituents thereof, had been recognized as correct, I could well see that these objections might be entitled to much weight. But this court has taken a different view of the matter, at least in cases of insolvent estates. And a majority of the court are of the opinion, in which I acquiesce, in consideration of the general tendency, if not direct determination, in previous cases, . . . that her removal cannot be held to bar or preclude her recovery."

The opinion of the court in the present case asserts that under the construction heretofore given to substantially the same terms as used in the constitution of 1876, defining the urban homestead, were it not for the proviso, the property in question would not be homestead.

But the court construes the proviso as operating upon the main provision or purview and its previous interpretation by the court, and as enlarging the homestead and extending the main provision.

It is confidently believed that this supposed function of

enlargement by a proviso is without support of judicial authority.

"The office of a proviso, generally, is either to except something from the enacting clause, to restrain its generality, or to exclude some possible ground of misinterpretation of it, as extending to cases not intended by the legislature to be brought within its purview." Minis v. U. S., 15 Pet., 423; Sedgwick on Con. of Stat. and Const. Law, 2d ed., 49; Potter's Dwarris on Stat. and Const., 118–120.

"The proviso is generally intended to restrain the enacting clause, and to except something which would otherwise have been within it, or in some measure to modify the enacting clause." Wayman v. Southard, 10 Wheat., pp. 1–30; Matter of Webb, 24 How. Pr., 247; 2 Pa. St., 218; 1 Swan (Tenn.), 413.

"A proviso in deeds or laws," says the supreme court of the United States in Voorhees v. U. S., 10 Pet., 449, "is a limitation or exception to a grant made or authority conferred, the effect of which is to declare that the one shall not operate, or the other be exercised, unless in the case provided."

The law-making power is presumed to know all pre-existing law on the subject to which any particular new provision relates; reading the law thus between the lines of this enactment: "The homestead in a city, etc., shall consist of a lot or lots used for the purposes of a home; *provided*, that the same shall continue to be used for the purpose of a home, or as a place to exercise the calling or business of the head of a family; *provided, also*, that no temporary renting," etc.

These provisos, viewed in the light of legal reasoning and legal construction, declare that thenceforth the law should be otherwise with respect to abandonment than as heretofore held, just as clearly as does the succeeding

section (52 of the same article) declare that henceforth the homestead estate should not be an estate in fee.

In Pryor *v.* Stone the venerated and learned first chief justice of this court, in delivering the opinion of the court, though, as a candid examination of the case will disclose, not necessary to the determination of the cause at bar, referring to sec. 22, art. 7, Const. of 1845, said: "It is not declared that the lots shall adjoin or be contiguous to each other; all that, by fair construction of the language, is required to entitle the property to exemption is, that the property should be used for the convenience or uses of the head or members of the family. The exemption should not be construed as reserving merely a residence where a family may eat, drink and sleep, but also a place where the head or members may pursue such business or avocation as may be necessary for the support and comfort of the family. The office of a lawyer or shop of a mechanic is necessary to the convenience and success of their respective professions or trade, but it would frequently be of much inconvenience and detriment that this shop or office should be a part of the same building, or even on the same lot, with the residence of the family. The exemption is not thus to be restricted in its benefits. It allows any number of lots, not to exceed $2,000, and it cannot be material how many, or how far, or how near, or remote from each other, may be the lots occupied for the convenience of the family, and for the prosecution of the business or employment of its head or members."

But the rule intimated here was distinctly negatived in Iken & Co. *v.* Olenick. The court was then constituted of five judges, Chief Justice Roberts and Associate Justices Moore, Gould, Devine and Reeves. Moore, Justice, in delivering the opinion of the court, an opinion which it is no invidious distinction to say is distinguished for

perspicuity and the broad common sense with which it applies to the homestead provision sound rules of legal construction, said: "The exemption of urban homestead was based upon the idea of securing a home to the family adequate to its wants and superior demands over those of creditors. But as the business of a majority of those living in cities, towns and villages is not confined to the place of their residence, the limitation of the urban homestead was fixed, not by the size or number of the lots designated, or appropriated as a home or a residence, but by their value at the time they were so designated. · . . . Certainly the framers of the constitution were not ignorant of the fact that much the larger number of those who have homesteads in our cities, towns and villages depend for support upon some other source than the use and appropriation of stores, offices or shops for the particular business or vocation to which they are accustomed. There is, therefore, no reason to suppose that in exempting from the demands of creditors the lot or lots designated and appropriated as a homestead, there was an intention to exempt also other lots used for an entirely different purpose, because in some instances such lots may have been used by the head of the family for his ordinary and usual avocation, and in this way indirectly contributed to the support and comfort of the family. That such property so used by the owner in connection with the business which he pursues is advantageous to him, and if exempted from the demands of creditors might contribute to the support of the family, is not to be doubted. But this is also the case with any other property owned by the debtor. . . . To exempt property, not in fact a part of the homestead, because it will be a source of income from which a support for the family may be drawn, would evidently be, in effect, to extend the exemption to the full value of its constitu-

tional limitation, and to secure the family, not only by the homestead and the lots connected with and appended thereto, or useful and necessary for its comfort and enjoyment as a home, but it may be also an income much beyond that of even a majority of the most affluent class of our city population. A construction of the constitutional exemption, intended to secure a home for the family, of which it could not be deprived by misfortune or improvidence, which would lead to such results, or afford the means of such fraudulent practices against honest creditors, cannot be sanctioned, unless it is demanded by the plain and unmistakable language in which it is expressed. . . .

" The visible occupation of the homestead, or mansion-house, and land adjoining, or in actual use, as appendant to and part thereof, is notice to creditors and purchasers dealing with the husband. But if any lots throughout the city, which may have been used for any business purpose by the husband, thereby become part and parcel of the homestead, which cannot be reached by creditors, or alienated by the husband without being joined by the wife, it is needless to say that the security of those dealing with the husband rests, to a very great extent, on a moral rather than any legal foundation."

The opinion then explains that the elaborate treatment of the subject in that case is not due to its intrinsic difficulty, or any doubt as to its proper determination, but to the great respect of the court for the seemingly contrary opinion of the learned and distinguished jurist, its first chief justice. And reviewing Pryor v. Strong and other cases, it concludes with emphasis and distinctness: " But whatever be the rule upon this subject, as held in former decisions of the court, and however much we regret to find ourselves differing in our conclusions from that recognized by the court heretofore, we think the language of

the constitution is plain and unmistakable in its meaning, and that it is our imperative duty to follow and observe it as we understand it."

And the question now is, whether the opposite construction so solemnly departed from by the court — a construction so emphatically reprobated by the court for its results as one that "cannot be sanctioned unless demanded by the plain and unmistakable language in which it is expressed" — has been thus indicated by the convention of 1876, by annexing to the terms of the exemption (substantially the same as formerly) the words, "*provided*, the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family; *provided, also,* that any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired."

First. It is a proviso; a proviso in form and in substance. It must be construed by the recognized rules of legal construction applicable to provisos. So construed, it limits, restricts and qualifies the purview. How? Not as a mere cursory view would suggest, by requiring use, as a home or place of business, as means of original designation, but by requiring the continuance of such use as by the purview was necessary for original designation as an absolutely essential condition to the preservation of the property as homestead. If it be replied that this would be a correct exposition except for the fact that there is a character of use referred to in the proviso, viz., use for business, which under the decision in Iken v. Olenick, the purview here being substantially as the old law there, is not fit or appropriate means of original designation, and that therefore there is nothing for this limitation to limit, nothing for this qualification to qualify, we answer, we reasonably account for the erroneous belief at the time in the existence of a subject to limit a predicate to qualify. Pryor v. Strong had announced the efficacy of use for

business as a means of designation, and all through the decisions, down to Iken v. Olenick, are to be found confirmatory expressions of members of the court.  42 Tex., containing Iken v. Olenick, was not published until 1877. But again, it may be said, this deprives the words "or as a place to exercise the calling or business of the head of a family" of all force or effect whatever.  If they are unintelligible, if they cannot stand under the application of legal rules of construction, let them perish; and let the law prevail.  Iken v. Olenick will continue the rule of decision.  The urban homestead will continue property visibly occupied as such, the mansion house and land adjoining, or in actual use, as appendant to and part thereof, giving notice to creditors and purchasers dealing with the husband, and the beneficence of the law will not become a snare affording the means of fraudulent practices against honest creditors and bona fide purchasers.

Second. It is not necessary, however, to construe the words as without practical operation; they will still have the obvious effect of preserving a homestead once properly acquired by use as a home, though such use may have been discontinued, provided the property shall continue to be used as a place of business by the head of a family; and this construction is inconsistent with the rule stated with regard to provisos.

Third. If, however, the court should be of the opinion that the proviso indicates methods of original designation, and, by its second clause, extends the definition of homestead, then it is respectfully submitted that there is another literal construction equally admissible with that given by court, namely, that where the true and heretofore only legal homestead — that is to say, the place of the house or home — does not in fact exist, then the place of business of the head of the family shall constitute a constructive homestead, and thus the urban homestead will consist of lot or lots — the home of the family —

" or," where there is no such home, the place of business of the head of the family. And if equally admissible as a literal construction upon the side of the latter, we cast into the balance the legal reasoning, sound common sense and public policy of Iken v. Olenick, to the end that numerous titles, honestly acquired, and long acquiesced in, may remain quieted; that it may not be necessary for an astute lawyer, familiar with the history of a family for at least a generation, to determine the question of homestead vel non, but that the common man, dealing with his fellow-man, looking, as he does, to the popular significance of this untechnical term, may be able to determine the facts for himself as well and as safely as the lawyer in his office or the judge on the bench.

We beg to remark that the court is mistaken in supposing that counsel for appellant designed to be understood as arguing that " or," in the proviso, should be read " and."

*Chesley & Haggerty,* for appellees.

From appellant's assertion in his argument that the framers of the constitution were ignorant of the decision of the case of Iken v. Olenick, and were entertaining " the erroneous belief at the time " (of making the constitution) that the doctrine of Pryor v. Stone was the law, while scarcely creditable to the many eminent lawyers in the convention, it follows that that body were well satisfied with the law as they believed it was, and that their intention was to let it remain that way. That they thought the word " homestead " included both the home and the place of business of the head of the family. This, if true, shows that this court has exactly accomplished the intention of the framers of the constitution by the judgment and opinion already rendered, and that a rehearing is unnecessary.

The theory of the argument is, that the purview of the

constitutional article speaks of the homestead as the place of the home, and the proviso is a limitation upon the purview, viz.: that it shall be used for a home or as the place of business, etc.

Out of this construction and argument several matters naturally suggest themselves:

1. The office of all artificial rules of construction, even of provisos, is to make apparent what would otherwise be obscure, while here it is appellant's application of rules of construction that creates the obscurity.

2. The first and great rule of construction is, that words and sentences shall be used in their ordinary grammatical signification.

In the case at bar, as has already been said by this court, "the entire sentence as framed clearly and properly expresses the intention;" and we venture to suggest that no court has ever permitted an intention, when clearly expressed in a provision of a constitution, to be frittered away by technical rules of construction.

The object of construction as applied to a written constitution is to give effect to the intention of the people in adopting it. Cooley's Const. Lim., 55. Possible or even probable meanings, when one is plainly declared in the instrument itself, the courts are not at liberty to search for elsewhere. Id.

True, this intent is to be found in the instrument itself; but here the rules of construction as applicable to constitutions and to statutes diverge, and those who are charged with the duty of expounding the former are not authorized to apply to the language employed any technical or abstruse meaning, but are required to give effect to its plain and ordinary signification. Hunt v. The State, 7 Tex. Ct. App., 231.

Constitutions are not designed for metaphysical or logical subtleties, for niceties of expression, for critical propriety, for elaborate shades of meaning, or for the ex-

ercise of philosophical acuteness or judicial research. They are instruments of a practical nature, founded on the common wants, designed for common use, and fitted for common understanding. The people make them, the people adopt them, the people must be supposed to read them with the help of common sense, and cannot be presumed to admit in them any recondite meaning, or any extraordinary gloss. Story on Const., sec. 451.

A constitution is not to receive a technical construction, like a common law instrument or statute. It is to be interpreted so as to carry out the great principles of government, not to defeat them. 34 Ala., 238.

3. Appellant concedes in his construction of the constitution, that the lot or lots do not become a homestead until they are used for the purpose of a home (page 15), and then adds (that they will remain such), "provided they shall continue to be used for the purpose of a home or as a place to exercise the calling or business," etc. Now this gratuitous word "continue" applies with equal force to each of the succeeding clauses; the word also imports an existing condition of things which is to be continued; and both of the succeeding clauses being equally prominent, and, according to appellant, equally potent in preserving the homestead character of the lots, it is perfectly fair to transpose the clauses thus: "Provided they shall continue to be used as a place to exercise the calling or business of the head of a family, or for the purposes of a home.  .  .  .

The logical result of appellant's construction betrays a complete want of a consistent underlying principle or purpose to be subserved, and we submit that had it been the intention of the convention to make the urban homestead what appellant contends that it is, it would have used apt and appropriate language for that purpose.

STAYTON, ASSOCIATE JUSTICE.— This cause was before this court at a former term, and an opinion was therein rendered by Chief Justice Moore, affirming the judgment of the court below, and after a careful consideration of the case upon this motion for rehearing, with all the light thrown upon the subject by brief and oral argument, evidencing a careful and patient investigation of the question involved by able counsel, we are unable to come to a conclusion different to that formerly arrived at.

We are of the opinion that the framers of the present constitution intended, by the language used in that instrument, to so far extend the meaning of the words, "the homestead of a family," as to make them embrace not only the home or residence of the family, but in addition thereto the place where the head of the family may exercise his calling or business, even though the same be upon land in a town or city not contiguous to that upon which the home or residence of the family stands.

If that part of the constitution upon which the determination of the question involved in this cause depends had been intended only to operate upon that part of the property upon which the home or residence of the family stands which might be used by the head of the family as a place to exercise his calling or business, the first proviso in section 51, art. XVI of the constitution would have been entirely unnecessary; for under all of the decisions of this court construing the provisions of former constitutions of this state upon this subject, which were similar to the terms found in the present constitution, if the provisos are excluded, such a place to exercise the calling or business of the head of the family would have been fully protected.

The intention by the constitution, in the language used, must have been to extend the protection which it was intended to give to something under the designation of

"the homestead of a family," however incongruous that something may be to the ordinary meaning of the words "homestead" or "home of the family," which had not been considered protected by the terms of former constitutions, under the decisions of this court, and that that something was "a place to exercise the calling or business of the head of the family."

The exemption for rural homestead gives not only the home or residence of the family, but not exceeding two hundred acres of land in one or more parcels, enough to enable the head of the family thereon to exercise his calling or business, agricultural or other, and thereby to provide a support for his family.

The letter and spirit of the constitution harmonizes the urban exemption with that before its adoption given only to the rural, and exempts to each alike a place not only for the shelter of the family, but also a place where its head may exercise his calling or business, and thereby provide subsistence for the family dependent upon him, whether the home and the place of business be upon the same lot or parcel of land or not, and whether contiguous or detached. The reasons why the protection in a town or city should extend to a place for the exercise of the calling or business of the head of the family, detached from the home or residence of the family, readily suggest themselves, and need no illustration.

We recognize, however, in the constitution, the establishment of a rule for the preservation of the full urban exemption, which does not apply to the rural exemption. While the use to which the property is applied operates as a designation of the homestead in either case, yet the use of the rural homestead otherwise than as the home of the family is not necessary to preserve such a homestead to the full extent of the area provided by the constitution; while in reference to the urban homestead, the use of the home of the family as a residence will not be

sufficient to protect and keep alive the exemption of a place for the head of a family to exercise his calling or business, which is detached and separate from the home.

The exemption of the place of business, when detached from the place of the home, can only be kept up by use thereof, and an abandonment thereof will withdraw the exemption therefrom, notwithstanding the lot upon which the home of the family may stand may still be used by the family as a home.

The motion for rehearing is overruled.

MOTION FOR REHEARING OVERRULED.