### W. C. INGE AND J. W. BORING V. J. H. CAIN.

(Case No. 1881)

1. HOMESTEAD—CONSTITUTION OF 1845—LIEN.—Under the constitution of 1845, a lien upon the homestead, given by the husband, or by the husband and wife, which could be effective only through the instrumentality of a forced sale, was not void or voidable, but inoperative. (Sampson v. Williamson, 6 Tex.) If the lien could be foreclosed without a forced sale it was valid and effective. (Bomback v. Sykes, 24 Tex., 217.)

2. SAME.—The lien could be foreclosed by forced sale of the property if the homestead use had ceased at the sale of the property. (Lee v. Kingsbury, 13 Tex., 68; Stewart v. Mackay, 16 Tex., 56.)

3. SAME—CONSTITUTION OF 1869.—The constitution of 1869 was not different in these respects from that of 1845. (Jordan v. Peak, 38 Tex., 429; Petty v. Barrett, 37 Tex., 84.)

4. HOMESTEAD—USE.—Under the constitutions of 1845, 1866 and 1869, in order for several city lots to constitute one homestead, they had to be used for homestead purposes, not as places of business for the head of the family. (Iken & Co. v. Olenick, 42 Tex., 195; overruling Hancock v. Morgan, 17 Tex., 582, etc.)

5. SAME—CONSTITUTION OF 1876.—The constitution of 1876 extended the exemption to the place of business of the head of the family, and it was declared that no mortgage, trust deed or other lien upon homesteads, "shall ever be valid," and hence they could never be operative, whether made by the husband or by the husband and wife.

6. SAME—CONSTRUCTION.—What can not "ever be valid" is never valid, and what is never valid is always void. No distinction was intended between mortgages and other liens, and sales involving conditions of defeasance. (Former Texas decisions reviewed, and California decisions considered.)

7. HOMESTEAD—ABANDONMENT.—See statement of case for facts held insufficient to constitute abandonment of homestead.

8. SAME.—A husband, without the concurrence of his wife, may divest his place of business of the homestead protection by abandonment, and then himself convey it, but he can not make a deed of assignment to it before abandonment without the consent of his wife, in legal form. (Miller v. Menke, 56 Tex., 539, approved.)

APPEAL from Gregg. Tried below before Hon. Felix J. McCord.

This is an ordinary suit of trespass to try title and for damages, instituted by appellee against W. C. Inge, appellant, and The Mutual Fire Shielders Association. The land in controversy is described as follows : A part of the H. McNutt headright survey in Gregg county, and known and designated upon the map of the town of Longview as the east half of the north half of lot. number six, in lot number twenty-one.

On July 21, 1885, J. W. Boring, assignee of the estate of T. E. Kennard, filed his petition of intervention, and claimed the property by virtue of a deed of assignment from Kennard to himself, which deed of assignment was executed and delivered on January 20, 1885. There was situated upon the property in controversy a two-story brick storehouse. T. E. Kennard, who was a married man and living with his family on other lots in the same city, occupied the house as a dry goods store, from March 1, 1882, until January 20, 1885, upon which last mentioned date he assigned his property—such as was not exempt—to J. W. Boring for the benefit of his creditors. In connection with his dry goods business he had been and was carrying on, in the building, a fire insurance business, and soon after he made the assignment he moved his insurance office into the second story of the storehouse, and there conducted his business until the sale of the storehouse by himself and wife to. appellant Inge, on April 13, 1885. Both defendants answered plaintiff's petition by general demurrer and plea of not guilty, and the appellant, W. C. Inge, plead specially the homestead exemption of the property to T. E. Kennard and wife; that the deed of trust from T. E. Kennard to A. S. Taylor, trustee for J. H. Cain, appellee, and the sale thereunder, by virtue of which appellee claimed title, were void and imperative under the constitution and law, and passed no title to appellee.

And appellant, Inge, answered the intervenor's petition by general demurrer and general denial. All parties agreed on the Texas & Pacific Railway company as common source of title by written instrument.

Appellee deraigned title as follows : Texas & Pacific Railway company to Boring & Kennard, by deed dated May 19, 1874. J. W. Boring to T. E. Kennard, by deed dated March 1, 1882. T. E. Kennard to A. S. Taylor, trustee for J. H. Cain, deed of trust, dated January 11, 1883. A. S. Taylor, trustee to John H. Cain, by deed dated April 11, 1885.

Appellant, W. C. Inge, relied upon the same title down to T. E. Kennard, and claimed title by virtue of a deed from T. E. Kennard and his wife, Sarah E. Kennard, dated April 13, 1885.

J. W. Boring, the intervenor, claimed title by virtue of a deed of assignment from T. E. Kennard to him, dated January 20, 1885.

The case came on for trial August 7, 1885. The court overruled appellant's general demurrer to appellee's general and first supplemental petitions, and also overruled defendant's general demurrer to intervenor's first original petition, and upon trial of the cause (a jury being waived) the court rendered judgment for appellee, for the land and $172.50 damages against defendants and intervenor.

*T. M. Campbell* and *J. M. Duncan*, for appellant, Inge, cited: Jacobs, Bernheim & Co. *v.* Hawkins, 63 Tex., 1; Axer *v.* Bassett, 63 Tex., 545.

*C. B. & S. B. Kilgore*, for appellant, Boring, cited: Miller *v.* Menke, 56 Tex., 539; Shryock & Rowland *v.* Latimer, 57 Tex., 675; McDonald *v.* Campbell, 57 Tex., 614; Scheuber et al. *v.* Ballowe et al. 5 Law Rev., 325; Tilman *v.* Brown, 5 Law Rev., 443.

*Booty & Young* and *M. R. Geer*, for appellee, as to the effect of the deed of assignment to Boring, cited: Hall *v.* Bliss, 118 Mass., 554; Chace *v.* Chapin, 130 Mass., 128; 17 N. Y., 580; in re. Howe, 1 Paige's, Ch. 125 ; 2 Paige's Ch., 567; Haggerty *v.* Palmer, 6 Johnson's Ch., 437; 11 Ala., 1067; in re. Lambert, 2 B. R., 426; in re. Bowe, 1 B. R., 628.

On the trust deed being simply *voidable*, they cited: Sec. 50, General Provisions Constitution, 1875; Stuart *v.* Mackay, 16 Tex., 56; 57 Tex., 674; Allen *v.* Cook, 26 Barb., 374; 4 Allen, 516; Heinmelman *v.* Schmidt, 23 Cal., 117; Gee *v.* Moore, 14 Cal., 472; Bowman *v.* Norton, 16 Cal., 214; Folsom *v.* Carli, 5 Minn., 264; Tillatson *v.* Mellard, 7 Minn., 419; Vasey *v.* Trustees, &c., 59 Ill., 188-9; 48 Ill., 369; 69 Ill., 448.

On the question of homestead, they cited : 55 Tex., 355; Cooley on Const. Lim., 4th ed., pp. 78-80; Smith *v.* Saxton, 6 Pick., 486; Stuart *v.* Mackay, 16 Tex., 56; Shyrock & Rowland *v.* Latimer, 57 Tex., 674; 23 Cal., 117; 14 Cal., 472; 16 Cal., 213; 5 Minn., 269; 7 Minn., 419; 55 Tex., 355; 56 Tex., 287; 58 Tex., 334.

ROBERTSON, ASSOCIATE JUSTICE.—The constitution of 1845 (sec. 22 of Gen. Prov.) exempted the homestead of the family from forced sale and prohibited the husband from disposing of it without the consent of the wife. The right of the husband and wife to encumber or dispose of it was not restricted. An encumbrance which could be effective only through the instrumentality of a forced sale, was neither void nor voidable, but, by reason of the inhibition of forced sales of the homestead, inoperative. Sampson & Kune *v.* Williamson, 6

Tex., 109. If the lien could be foreclosed without a forced sale, as by power of sale in a mortgage or deed of trust, it was both valid and effective. Bomback.*v.* Sykes, 24 Tex., 217.

The lien could be foreclosed by forced sale of the property, if the homestead use had ceased at the date of the remedy. Lee *v.* Kingsbury, 13 Tex., 68; Stuart *v.* Mackay, 16 Tex., 56.

The constitution of 1869, in these respects, was not different from that of 1845. Jordan *v.* Peak, 38 Tex., 429; Petty *v.* Barrett, 37 Tex., 84.

If the homestead was the separate property of the husband, or was community property, a lien given upon it by the husband alone would be inoperative only whilst the property was protected by the homestead use. Stuart *v.* Mackay, supra.

This use could not be disturbed under the lien given by the husband, but the lien was valid; its fruition was dependent upon the contingency of a cessation of the unassailable use.

Under the constitutions of 1845 and 1866, the urban homestead could consist of a lot, or lots, not exceeding in value, with the improvements upon them, two thousand dollars. In this respect the constitution of 1869 made material changes. Under it the urban homestead might consist of a lot or lots not exceeding in value *at the time of their destination*, five thousand dollars, *exclusive of improvements*. Under all these constitutions the lots had to be used for homestead purposes. The cases of Hancock *v.* Morgan, 17 Tex., 584; Pryor *v.* Stone, 19 Tex., 371; and Moore *v.* Whitis, 30 Tex., 443, had indicated that the use of one of these lots claimed as an urban homestead as the place of business of the head of the family, secured it the constitutional protection. But in Iken & Co. *v.* Olenick, 42 Tex., 200, the cases were reviewed, and the conclusion reached that such use would not protect the lot so used from forced sale. We have said thus much to show the situation when the constitution of 1876 was adopted. Liens upon the homestead, if given by the husband alone, were valid; and if given by the husband and wife, were valid; and if so given as to be effective without a forced sale, were valid and effective, and the place of business of the head of a family was not, as such, protected. The constitution of 1845 and that of 1866, provided for the protection of the homestead in precisely the same language. The constitution of 1869 changed the value of the urban homestead, but provided for its protection in the language substantially of the constitution of 1845. In the constitution of 1876, two distinctly new features are added. One is the protection of the place of business of the head of the family, the unprotected condition of which had then

been recently declared in Iken & Co. *v.* Olenick. No difficulty is made on this appeal in the construction or meaning of this feature. All the parties agree that the house and lot in controversy, for several years prior to January 20, 1885, was the place of business and part of the homestead of T. E. Kennard.

The other feature added in the constitution of 1876 is presented in the following language: "No mortgage, trust deed, or other lien on the homestead, shall ever be valid, * * * * whether such mortgage, trust deed or other lien shall have been created by the husband alone, or together with his wife, and all pretended sales of the homestead, involving any condition of defeasance, shall be void." Sec. 51, Gen. Prov. Trust deeds containing powers of sale, made by both husband and wife, before this, were both valid and effective. Now they are reduced to the same footing with mortgages and other liens. Mortgages and other liens were valid before, but not effective until the property was stripped of the homestead character. By this provision, none such "shall ever be valid." If they are never valid, they can never be operative. A distinction was also drawn before this between liens created by the husband alone, and those created by both husband and wife. That distinction is abolished. Whether made by one or both, it shall not "ever be valid." Sales involving a condition of defeasance are mortgages. Such sales are declared *void*; but mortgages shall not "ever be valid." There is no reason for distinguishing their fates, and the language does not do so. What cannot "ever be valid," is never valid, and what is never valid, is always void. Such expressions as *void, invalid*, are often used to denote only a qualified invalidity, and, whether used to denote that the thing prohibited is as if it were not, or is so considered only with reference to certain rights, persons or situations, must be determined by construction. If the framers of the constitution of 1876 had been content with the protection of the homestead provided under previous constitutions, the language already construed was certainly the best to be used in perpetuating the old rules. But the tendency in the popular mind to liberalize and enlarge this exemption, as was said in the case of Miller *v.* Menke, 56 Tex., 550, has been uniform and steady. The new features in the constitution of 1876 not only aptly reverse the holding in Iken & Co. *v.* Olenick, but also seem intended to prevent the further application of the principles announced in Sampson & Kune *v.* Williamson, Bomback *v.* Sykes, Lee *v.* Kingsbury, Stuart *v.* Mackay, and Jordan *v.* Peak. None of the various forms of liens presented in these cases, some immediately and others contingently operative, it is now provided, shall "ever be valid,"

whether given by the husband and wife, or by the husband alone. The homestead act of California of 1860, provided that " * * * no mortgage or alienation of any kind, made for the purpose of securing a loan or indebtedness upon the homestead property, shall be valid for any purpose whatever * * * ;" and in Bowman v. Norton, 16 Cal., 214, Chief Justice Field intimated the opinion that mortgages given upon the homestead after the passage of that act would be void. But in the case of Heinmelman v. Schmidt, 23 Cal., 117, upon the authority of cases arising under the act of 1851, and on a strict construction of the language of the act of 1860, the Supreme Court of that state, from which Chief Justice Field had been removed to a higher field of judicial employment, held that a mortgage upon the homestead became effectual as soon as a declaration of abandonment was filed. The portion of the act of 1860, above quoted, was repealed by the act of 1862, and whilst Heinmelman v. Schmidt was not afterwards, in terms, overruled, a different construction of the act of 1860 was announced in Peterson v. Hornblower, 33 Cal., 273, and conceded acted upon by the court in the case of Lears v. Dixon, 33 Cal., 326. If the language of the act of 1860 had been found in a constitution of California, it would not have been strictly construed, and the instruments denounced as invalid "for any purpose whatever" would not have escaped their death-warrant contained in the fair import of the words used. We are of opinion that the clause quoted from the constitution of 1876 renders all liens upon the homestead, not expressly excepted, absolutely void, and that they are not vitalized by the divestiture of the homestead character. The owner is no longer tempted to stake the home of his family upon desperate or delusive ventures, and the creditor can no more gamble upon the chances of the cessation of the homestead use. The lien, even when effective without a forced sale, was generally fiercely litigated through all the courts. The convention conceived that these were evils, and we think they have been effectively abolished.

The title of the appellee in the court below is derived through a deed of trust given by Kennard upon the house and lot in controversy at a time when it is admitted the house and lot constituted part of the homestead. Under the views expressed in this opinion the deed of trust was void, and the judgment for the appellee must be reversed.

This leaves only the issues between the two appellants. The assignee Boring, is entitled to recover only in the event that the property had ceased to be a part of Kennard's homestead at the date of the deed of assignment. Kennard was a merchant, and was carry-

ing on his business in the house and on the lot in controversy. The deed of assignment in terms conveys the storehouse to the assignee. This can make no difference. If it had ceased to be a part of his homestead, it passed without mention; if it remained a part of the homestead, as the wife did not join, it did not pass, though mentioned. The husband, without the concurrence of the wife, may divest his place of business of the homestead protection by abandonment, and then himself convey it. The court below held that the abandonment was accomplished by Kennard's insolvency, and by the deed of assignment conveying the homestead. An insolvent merchant may continue in business, and if he ceases and assigns, conveying his place of business to his assignee is not more conclusive evidence of his purpose not again to use it than conveying it to any other person. It appears that the cessation of his business and the execution of the deed of assignment were simultaneous acts. The only evidence that he had abandoned his business place as a part of his homestead *before* he assigned was that he was insolvent. This was manifestly insufficient. He may have intended to abandon, but he had not abandoned the homestead right in the house and lot in controversy, and his conveyance of it without the concurrence of his wife in legal form was therefore inoperative. We think the case of Miller *v.* Menke, 56 Tex., 559, is decisive of this.

The appellee, the plaintiff in the court below, was not entitled to recover, because he showed no title. The assignee, Boring, who was intervenor in the court below, was not entitled to recover, because his *prima facie* case was rebutted by proof of the homestead character of the property at the date of his deed. If Inge had no title, the result would necessarily be the same, and would remain unchanged, regardless of the decisions of other questions raised.

The case was tried below without a jury, and the only evidence excluded was that offered in behalf of appellant Inge. We therefore reverse the judgment and render here the judgment which should have been rendered in the court below, that the plaintiff and the intervenor in the court below take nothing by their suit, and the defendant go hence without day, and recover of the plaintiff all costs except those caused by the intervenor, and of him, those so caused.

                                          REVERSED AND RENDERED.

[Opinion delivered November 27, 1885.]