## WEBB *et ux. v.* HAYNER *et al.*

(*District Court, W. D. Texas.* March 12, 1892.)

1. **HOMESTEAD—WHAT CONSTITUTES—BUSINESS PREMISES.**
   Under Const. Tex. art. 16, § 51, an urban homestead may include not only a house and lot used as a family residence, but also other lots contiguous thereto, which are used by the head of the family for business purposes, provided that both together do not exceed $5,000 in value, exclusive of improvements. *Miller* v. *Menke,* 56 Tex. 550, followed.

2. **SAME—EXEMPTION.**
   Under sections 50, 51, such homestead is exempt from judicial sale to pay debts incurred in the purchase of merchandise.

3. **SAME—DESIGNATION—PLEADING.**
   Under the Texas constitution, a designation of business premises as a homestead is sufficiently shown by a bill which alleges that plaintiff "purchased said property for the purpose of using the same as a place to carry on his said business, and with the fixed intention of designating and using the same as his business homestead," and that on the day he acquired title he took possession, and has since continuously used the premises as his place of business. *Miller* v. *Menke,* 56 Tex. 550, followed.

4. **SAME—SALE OF HOMESTEAD—INJUNCTION.**
   Equity will enjoin the forced sale of a homestead to pay debts, since such sale, though invalid, would create a cloud upon the title.

In Equity. Suit by Joseph W. Webb and wife against Hayner & Co. and Paul Fricke to enjoin the sale of a homestead. Heard on demurrer to the bill. Overruled.

*George F. Pendexter,* for complainants.

*James B. Goff,* for defendants.

Before MAXEY, District Judge.

MAXEY, District Judge. This bill of injunction is brought to restrain Hayner & Co. and Paul Fricke, marshal of this district, from selling a house and lot claimed by complainants as a business homestead. Defendants demur on several grounds, but at the argument only the following were relied upon: (1) "That said bill discloses no equity, and sets forth no facts which, if true, would entitle the plaintiffs to the relief sought." (2) "That it appears from the averments in said bill contained that, if the same are true, plaintiffs have a full and adequate remedy at law." (3) "That said bill sets forth no facts constituting a designation of the land therein described as a homestead." It is alleged in the bill that the husband, Joseph W. Webb, has during the past 10 years been a married man, and the head of a family, a citizen of Travis county, and continuously during the period aforesaid has been engaged in the mercantile business as a member of the firm of John A. Webb & Bro. The bill then proceeds as follows:

"Your orator would further show that heretofore, to-wit, on November 9, 1881, he acquired by purchase a legal and equitable title to certain real estate in the city of Austin, Travis county, Texas, fully described as follows, to-wit: Ten feet off of the east side of lot No. three, and twenty-nine and a half feet off of the west side of lot No. four. Said lots adjoin each other, and are situated in block No. 68, in said city of Austin; together with the improvements thereon situated, consisting of a two-story brick store-house. *Third.* Your orator would further show that he purchased said property for

the purpose of using the same as a place to carry on his said business, and with the fixed intention of designating and using the same as his business homestead; and that on the day he acquired title to said property as aforesaid your orator took possession of the same and commenced at once to use said premises as a place to carry on his said business, and that he has since continuously used, occupied, claimed, and enjoyed said property as his place of business, and so now, at this time, uses, occupies, and enjoys the same. And he further shows that he has never sold or conveyed said property or any interest therein, but is now the legal and equitable owner thereof by fee-simple title, and has at all times since he acquired title thereto as aforesaid claimed, used, occupied, and enjoyed said property as his business homestead, and as a place in which to carry on his said business, and now so claims, uses, occupies, and enjoys the same. And your orator further shows that at the time he so designated said property as his business homestead, and commenced to use the same as a place in which to exercise and carry on his said business, the same, exclusive of the improvements thereon, was of less value than five thousand dollars, and that said premises now exceed in value the sum of two thousand dollars. And, further, your orator shows that he has not now, and did not have any residence homestead at the date of the levy of said execution the value of which, added to that of his said business homestead, would equal five thousand dollars. *Fourth.* Your orator would further show that he, being a married man, and the head of a family, as aforesaid, is, and was at the date he acquired said property, under the constitution and laws of the state of Texas, entitled to hold said property as his homestead, exempt from all claim thereon by his creditors, of the nature hereinafter mentioned; and that said property, so being his homestead as aforesaid, was at all times since he acquired the same, and is now, not subject to be levied on or sold to satisfy any judgment or execution against him of the nature hereinafter mentioned, of which fact the above-named defendants were each and all advised at and before the dates hereinafter mentioned."

The allegations of the bill also show that on July 20, 1882, the defendants Hayner & Co., merchants of St. Louis, Mo., recovered judgment against the firm of John A. Webb & Bro. in the circuit court of the United States for this district in the sum of $14,573.89, the same being for the value of goods, wares, and merchandise theretofore sold and delivered by Hayner & Co. to John A. Webb & Bro.; that Fricke, the marshal, acting under the direction and authority of his co-defendants, did, on the 13th day of November, 1891, levy a writ of execution on complainants' said business homestead, and on the same day duly advertised said property for sale. It is further alleged by complainant that the levy of said execution on his homestead, and the advertisement thereof under the same, have cast a cloud upon his title to the property; "and he further shows and represents that said defendants now threaten and intend to sell his said homestead pursuant to said levy and advertisement, and will proceed so to do unless restrained by your honors from so doing. And your orator further shows and represents to your honors that the threatened sale of his said homestead by defendants will cause him great and irreparable injury, for which he has no adequate remedy at law; that said sale will cast a further cloud upon your orator's title to his said homestead, and thereby greatly decrease the value thereof, and will of necessity require your orator to institute and prosecute, at great expense to himself, a suit or suits against the pur-

chasers of his said property at such sale for the purpose of removing the cloud thereby cast on his title to his said homestead."

The first question arising on the facts, admitted by the demurrer to be true, is whether the house and lot claimed by complainants as a business homestead are exempt from forced sale under the constitution and laws of the state. It is provided by the constitution that "the homestead of a family shall be, and is hereby, protected from forced sale for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon; and in this last case only when the work and material are contracted for in writing, with the consent of the wife given in the same manner as is required in making a sale and conveyance of the homestead; nor shall the owner, if a married man, sell the homestead without the consent of the wife given in such manner as may be prescribed by law. No mortgage, trust-deed, or other lien on the homestead shall ever be valid except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage or trust-deed or other lien shall have been created by the husband alone or together with his wife; and all pretended sales of the homestead, involving any condition of defeasance, shall be void." Const. art. 16, § 50. "The homestead, in a city, town, or village, shall consist of lot or lots, not to exceed in value five thousand dollars at the time of their designation as the homestead, without reference to the value of any improvements thereon: provided, they shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family." Id. § 51. Construing the foregoing constitutional provisions, the supreme court of this state holds that not only a house and lots used as a home for the family are exempt from forced sale, but that the exemption also includes other lots, not contiguous to the home place, used by the head of a family for business purposes, provided both do not exceed in value the sum of $5,000, without reference to improvements. The question was presented to the supreme court in 1882, and, speaking for the court, Mr. Chief Justice Moore says:

"In seeking to ascertain the extent or limit of the urban homestead which is exempted from forced sale, it is well to note that while the first clause of the section of the constitution under consideration declares that the homestead in a city, town, or village shall consist of a lot or lots, not exceeding in value, etc., the particular lot or lots which shall constitute the homestead are only indicated or designated in the proviso. By it the homestead lot or lots are designated by the use made of them; that is, if the lots, not exceeding in value $5,000, are used as a home or place of business, such lots are recognized as the constitutional homestead, and are exempted from forced sales. The lots exempt include all used in the one way or the other, unless they together exceed the limit of value." *Miller* v. *Menke*, 56 Tex. 550, 551.

A motion for rehearing was filed in that case, and in deciding the motion Mr. Justice Stayton, at pages 562, 563, observes:

"We are of the opinion that the framers of the present constitution intended, by the language used in that instrument, to so far extend the meaning of the words, ' the homestead of a family,' as to make them embrace not

only the home or residence of the family, but, in addition thereto, the place where the head of the family may exercise his calling or business, even though. the same be upon land in a town or city, not contiguous to that upon which the home or residence of the family stands. * * * The intention by the constitution, in the language used, must have been to extend the protection which it was intended to give to something under the designation of 'the homestead of a family,' however incongruous that something may be to the ordinary meaning of the words 'homestead' or 'home of the family,' which had not been considered protected by the terms of former constitutions, under the decisions of this court, and that that something was 'a place to exercise the calling or business of the head of the family.' "

*Shryock* v. *Latimer*, 57 Tex. 674; *Inge* v. *Cain*, 65 Tex. 75; *Willis* v. *Mike*, 76 Tex. 82, 13 S. W. Rep. 58.

That the constitution places the business homestead of a debtor beyond the reach of creditors who attempt to sell it to satisfy an indebtedness incurred in the purchase of goods, wares, and merchandise, is clearly settled by all the cases cited. The objection urged by defendants, that the "bill sets forth no facts constituting a designation of the land therein described as a homestead," is answered by the chief justice in *Miller* v. *Menke*, where he says: "By it [meaning the constitution] the homestead lot or lots are designated by the use made of them." The allegations of the bill plainly indicate the intention of complainants, and the use made of the property by them, and that use, coupled with the intention, was a designation of the lots as a homestead, within the meaning of the constitution. See *Gardner* v. *Douglass*, 64 Tex. 76.

The remaining ground of objection is that a court of equity will not restrain the sale of a homestead, but remit the party complaining to his remedy at law. This objection presupposes that a sale of the homestead, owing to its invalidity, would convey no title to the purchaser, and, therefore, equity should not interpose its restraining hand. Upon this point the remarks of Mr. Chief Justice STAYTON in *Cattle Co.* v. *State*, 68 Tex. 537, 538, 4 S. W. Rep. 865, although having reference to another question, are strikingly apposite:            .            •

"A defendant who asserts claim, even under an instrument void on its face, cannot be heard to say that it has not such semblance of validity as to create a cloud upon the title to property which it professes to convey that will prejudice the right of the real owner if it be not removed. He cannot be heard to say that others will not attach to it the same degree of faith and credit as a title-bearing instrument which he in good faith gives to it, and that, to the extent of the doubt or cloud thus cast upon the real title, its holder is injured, or is likely to be injured."

That courts of equity will enjoin the sale of a homestead under execution appears well established by the authorities. The rule is thus stated by Mr. High:

"Regarding the sale of the homestead interest as operating as a cloud upon the title, and the legal remedies being generally inadequate for the prevention of such a grievance, relief in equity has been freely extended for the purpose of preventing an enforced sale under execution of premises in the actual occupancy of the debtor as a homestead, and which are protected from levy and sale under the homestead exemption laws of the state." 1 High, Inj. § 438.

Mr. Freeman says:

"The sale of homestead property under execution has frequently been enjoined. The injunction, in such cases, has uniformly been justified upon the ground that the sale, if permitted to be made, would create a cloud on the defendant's title." Freem. Ex'ns, § 439.

In Thompson on Homesteads and Exemptions, (section 681,) it is said by the author that—

"One of the grounds on which courts of equity frequently interfere for the protection of the debtor's homestead is cloud upon title. Thus, where a house constituting a part of a debtor's homestead has been sold under an execution against him, although the sale confers no title, yet it constitutes such a cloud upon the debtor's title that equity will interfere to enjoin possession. So, in order to prevent a cloud being cast upon his title, a court of equity will enjoin a threatened sale of a debtor's homestead."

See, also, 10 Amer. & Eng. Enc. Law, p. 809, tit. "Injunctions." Reference also to the following cases will conclusively show that injunction is the proper remedy to prevent the threatened sale of a homestead under circumstances disclosed by the bill in this suit. *Gardner* v. *Douglass, supra*; *Van Ratcliff* v. *Call,* 72 Tex. 491, 10 S. W. Rep. 578; *Fink* v. *O'Neil,* 106 U. S. 272, 1 Sup. Ct. Rep. 325.

Defendants rely, in support of their position, upon *Whitman* v. *Willis,* 51 Tex. 421; *Carlin* v. *Hudson,* 12 Tex. 202; and *Cameron* v. *White,* 3 Tex. 152. It is apparent from an examination of those authorities that they are without application to the facts as set forth in the bill of complaint. There no homestead question was involved. Here the only purpose of the bill is to restrain the sale of homestead property, which is securely protected from forced sale by the constitution and laws of the state. The demurrer to the bill should be overruled; and it is so ordered.