HERMAN IKEN AND CO. V. TH. OLENICK AND OTHERS.

1. HOMESTEAD. Ordinarily there can be no blending of homestead rights so that the exemptions can be partly in town and partly in the country.

2. SAME. The leading idea in Homestead Exemptions is to furnish a home and shelter to the family; but limited and confined to the residence, and not to property of a specific value, irrespective of its uses.

3. SAME. It was not the purpose of the framers of the Constitution, to exempt a definite quantity of land in the country, or lots of a designated value in town, irrespective of the uses to which such property had been applied, so as to provide the family a homestead, if its head had failed to do so, or extend and enlarge such homestead as had already been provided, and secure to the family an adequate support, or the means of making such support, without regard to the rights of creditors, out of other property not connected with it, or from its nature and character, or from its use forming part of the homestead.

4. SAME. The urban homestead may consist of one or more lots, but unless such lot or lots constitute or form in fact part and parcel of the homestead they are not included in the exemption ; excluding from protection lots in no way connected with or contributing, by their particular use or appropriation, to the comfort of a mansion house as a homestead.

5. SAME. The revenue or profit derived from property situated elsewhere may contribute to the comfort of its possessor, but this by no means authorizes the conclusion that a lot or lots disconnected from the homestead, are appendages to it, or contributing by their use to the enjoyment of it as the residence or home of the family.

6. Where a head of a family lived at a place not laid off in lots and streets —called a *settlement* (and which is a small collection of houses in the country)—and owned four acres there in two separate tracts or lots, on one upon which he gave a deed of trust was a house in which he was doing business as a merchant, on the other, three or four hundred yards distant, and consisting of three acres was the residence of himself and family ; the two tracts being worth about two thousand and five hundred dollars. *Held* that a sale of the store house and lot under the trust deed passed title although the wife did not join in the trust deed.

The facts are stated in the opinion.

*Friend & Smith*, for appellants.

*H. Clay Pleasants*, for appellees.

MOORE, J.   The note upon which this suit was brought was given, as appellees insist, for the purchase-money of a lot of one acre of land, situated in Meyersville, sold under and by virtue of a trust deed, executed by John Kron to secure payment of a debt owing by him to appellants.   And unless this lot when sold was part of the homestead of said Kron and wife, there is no pretense that appellees had any valid defense to the suit.

It appears from the statement of facts, that the lot in question was purchased by Kron.   He was therefore authorized to sell and dispose of it, whether is was his separate property, or belonged to the community, as we must presume, unless some reason why he could not do so is shown by those who object to the validity of his conveyance.   If he could not sell it, because it was a part of the homestead, the burden of showing this was upon the appellees, as the title of the trustees, by whom the sale was made, appeared on its face regular and complete.

The testimony upon which appellees relied to do this, seems to us quite meagre and unsatisfactory, even if we were prepared to sanction the liberal and broad rule of construction for ascertaining and determining the extent and limits of the homestead exemption, which was adopted in the court below.   The purport of the testimony on this point, is, that Kron and wife lived at Meyersville at the time he executed the deed of trust, and when the sale under it was made; that he owned there four acres of land, in two separate tracts or lots; that on the lot on which he gave the deed of trust, there was a store and warehouse, in which he was doing business as a merchant; that he had a wife and children; the residence of himself and family was on the other lot, which contained three acres. That he owned no land but these two lots, which together were worth two thousand dollars or two thousand and five hundred dollars.   They were situated from three to four hundred yards apart, and other lots or tracts of land intervened between them. "Meyersville," says the statement of facts, " is not laid off in

"lots and streets. It is called a settlement, and is a small collec-
"tion of houses in the country."

Does the homestead right embrace these two lots thus dis-
connected, and appropriated to these dissimilar and distinct
uses and purposes?

Before undertaking the determination of this question, it
may not be amiss to consider whether the homestead of Kron
and wife should be regarded as a rural or urban homestead.
The constitutional limitation of the extent and value between
these two classes of homesteads presents a marked difference
between them. If the homestead is in the country, there is no
restriction upon its value, but it must not exceed two hundred
acres. While, if it is in town, the limitation is on the value of
the town lots of which it consists, at the time of their dedica-
tion as a homestead, without reference to their subsequently
increased value, or that of any improvements placed upon
them. From this difference in the restriction and limitation
upon the extent and value of these different classes of home-
stead rights, it seems quite obvious there can (unless under
some very extraordinary circumstances, Taylor v. Baulware,
17 Texas, 77) be no blending of them, so that the homestead
exemption can be partly in town and partly in the country. It
is, therefore, the most favorable view of the homestead claim in
this case to regard the lot sold under the trust deed, and that
on which Kron's residence was situated, as being in the same
category, and as this may be done without doing violence to the
evidence in the record, we will so treat and consider them.

In determining whether the lot for which the note upon
which the suit was brought was given, is included in a city,
town or village, it is to be noted that the use to which it was
applied is such as is much more usual and customary in cities
towns and villages, than in the country. The quantity of land
included in the tract or lot comports more with a description of
town or village lots, than tracts of land in the country. The
locality where it is situated has a distinctive name or designa-
tion, such as is customary and usual with towns and villages.

And in the absence of any evidence tending to a different con-
clusion, we must, we think, conclude that this lot was included
in a village. Although the homestead exemption in the coun-
try and that in a city, town or village is so obviously different in
its character and extent, there is no certain guide furnished by
the constitution by which in all cases they can be plainly and
readily distinguished. As there is no definite rule by which
the precise time can be determined when the country settle-
ment has grown into the village, or where the unincorporated
town or village ends and the country begins, evidently it must
often be difficult to say to which class any particular home-
stead claim belongs. In such cases, and in the absence of
proof by which the matter may be decided as one of fact, it
seems to us the nature and character of the property in question
and the uses and purposes to which it is applied, may be looked
to as furnishing the best guide for its determination. The
leading and fundamental idea connected with a homestead is
unquestionably associated with that of a place of residence for
the family, where the independence and security of a home
may be enjoyed, without danger of its loss, or harassment and
disturbance by reason of the improvidence or misfortune of the
head or any other member of the family. It is a secure asy-
lum of which the family cannot be deprived by creditors.
Within its sanctuary, however urgent may be their demands,
they cannot intrude.

It was not, however, the purpose of the framers of the con-
stitution to exempt from the claims of creditors a definite
quantity of land in the country or lots of a designated value in
town, irrespective of the uses to which such property had been
applied, so that the family, if its head had failed to do this,
might provide a homestead, or extend and enlarge such home-
stead as had already been provided, or secure to the family an
adequate support, or the means of making such a support,
without regard to the rights of creditors, out of other property
not connected with, or from its nature and character, or from
its use forming a part of the homestead.

The leading idea in such exemption, as we have said, is to furnish a home and shelter to the family. This however would have been but poorly done, if the homestead exemption in the country had been limited to the house occupied by the family, or the yard, garden, and lots appendant to it merely as a residence. The idea of a home or residence in the country imports that there is connected with it the means and opportunity of following the pursuits of the country. The mere exemption of the residence would ordinarily be of little practicable benefit to the family, as it would probably have to be abandoned, and the family go elsewhere to find employment from which to realize a support. The homestead exemption in the country was therefore extended so as to include two hundred acres of the land previously occupied, appropriated, and used in connection with it. The land thus exempted is evidently incident and appendant to and from the nature of the case forms a part of the country homestead.

The exemption of an urban homestead was also based upon the idea of securing a home for the family adequate to its wants and superior demands over those of creditors. But as the business of a majority of those living in cities, towns and villages, is not confined to the places of their residences, the limitation of the urban homestead was fixed, not by the size or number of the lots designated or appropriated as a home or a residence, but to their value at the time they were so designated, without reference to their subsequent appreciation, or the improvements placed upon them.

Certainly the framers of the constitution were not ignorant of the fact, that much the larger number of those who have homesteads in our cities, towns and villages, depend for support upon other sources than the use and appropriation of stores, offices, or shops for the particular business or vocation to which they are accustomed. There is therefore no reason to suppose, that in exempting from the demands of creditors the lot or lots designated and appropriated as a homestead, there was an intention to exempt, also, other lots used for an entirely

Opinion of the Court.

different purpose, because in some instances such lots may have been used by the head of the family for his ordinary and usual business avocation, and in this way indirectly contributed to the support and comfort of the family. That such property so used by the owner in connection with the business which he pursues is advantageous to him, and if exempted from the demands of creditors, it might contribute to the support of the family, is not to be doubted. But this is also the case with respect to any other property owned by the debtor.

If the fact that such property has contributed to the support of the family before creditors seek to have it applied to the payment of their debts, and that its rent will afford a fund for their maintenance, is a reason why it should be exempted as a part of the homestead, the same may be said of any other property from which the debtor derives any rents or revenue. To exempt property, not in fact a part of the homestead, because it will be a source of income from which a support for the family may be drawn, would evidently be, in effect, to extend the exemption to the full value of its constitutional limitation, and to secure the family, not only by the homestead, and the lots connected with and appendant thereto, or useful and necessary for its comfort and enjoyment as a home, but it may be also an income much beyond that of even a majority of the most affluent class of our city population. A construction of the constitutional exemption, intended to secure a home for the family, of which it could not be deprived by misfortune or improvidence, which would lead to such results, or afford the means of such fraudulent practices against honest creditors cannot be sanctioned, unless imperatively demanded by the plain and unmistakable language in which it is expressed. But the language of the constitution, instead of countenancing such a construction, in our opinion, unmistakably repels it. The language of the constitution is, "The home-"stead of the family of any city, town, or village, lot or lots, "not to exceed, etc." Unquestionably the exemption is limited, and confined to the homestead, and not to property of a

specific value, irrespective of its uses. It may consist, it is true, of one or more lots, but unless such lot or lots constitute or form in fact, part and parcel of the homstead, they are not included in the exemption. The word homestead as understood in popular use, and as defined by standard lexicographers, conveys the idea of a house and place connected therewith. It is, says Worcester, "The place of the house; a mansion-house with the adjoining land." And though it may be, the adjoining land connected with the mansion-house is not to be understood, in the constitutional exemption, in its strictly literal sense, but may include the land which, from its use, as well as its contiguity, it is to be supposed was intended to be exempted from the demands of creditors, as part and parcel of the land connected with and necessary for the use and enjoyment of the mansion-house; and without which there would not be an exemption of both, the house and place necessary to the full measure of the constitutional exemption intended to be secured for the benefit of the family. But this falls far short of giving any warrant for including in the exemption, as a part of the urban homestead, lots in no way connected with, or contributing by their particular use or appropriation, to the comfort and enjoyment of a mansion-house as a homestead. The revenue or profit derived from property wherever situated, may no doubt contribute to the comfort and pleasure of its possessor; but this by no means authorized the conclusion, that a lot or lots disconnected from the homestead, are appendages to it, or contributing by their use to the enjoyment of it as a residence, or house of the family.

It may also be added, that the homestead exemption, while designed to secure to the wife and family a home of which they cannot be deprived by creditors or purchasers from the husband without the consent of the wife, was not intended to operate as a means of fraud upon either creditors or purchasers. Nor is there any reasonable danger that it will, if confined within the limits intended by the constitution. The visible occupation of the homestead, or mansion-house and land

adjoining, or in actual use, as appendant to and part thereof, is notice to creditors and purchasers dealing with the husband. But if any lots throughout the city, which may have been used for any business purpose by the husband, thereby become a part and parcel of the homestead, which cannot be reached by creditors, is alienated by the husband without being joined by the wife, it is needless to say that the security of those so dealing with the husband rests, to a very great extent, on a moral rather than any legal foundation.

We have been led to discuss the question presented in this case thus elaborately, not by reason of its intrinsic difficulty, or any doubt on our part as to its proper determination, but out of our great respect for the seemingly contrary opinion of the learned and distinguished jurist, who was the first Chief Justice of this court, as may be inferred from expressions used by him in the case of Stone v. Prior, 19 Texas, 372, and also from the fact that it appears from references to this case, in subsequent opinions of other members of this court, that it seems to have been supposed that the homestead exemption had been held in that case to have a broader scope than we think can be given it. (30 Texas, 440 ; 33 Texas, 212 ; 34 Texas 617 ; 38 Texas, 422.)

An examination of the case of Stone v. Pryor will show, however, that the lot in question in that case was applied to some extent, at least, to homestead purposes. And in most, if not all of the subsequent cases, though apparently approving the broad rule, which seems to be sanctioned by Judge Hemphill, that the lot, if it is necessary to the convenience or success in business of the husband, though entirely disconnected with the homestead, is within the exemption, the facts do not call directly for the decision of the question. It may also be observed that the cases of Hancock v. Morgan, 17 Texas, 582, and Methery v. Walker, Id. 593, which are the only authorities cited in Stone v. Pryor, do not support this proposition. In the last of these cases the lot in question was held not to be a part of the homestead, and the first merely decides that

the erection of a new house upon a part of the lot, and a temporary leasing of the old house, after the family had moved from it into the new one, did not exclude that part of the lot upon which the old house was situated from the protection of the homestead exemption, and subject it to demands of creditors.

But whatever be the rule upon this subject, as held in the former decisions of the court, and however much we regret to find ourselves differing in our conclusions from that recognized by the court heretofore, we think the language of the constitution is plain and unmistakable in its meaning, and that it is our imperative duty to follow and observe it, as we understand it. In doing which we must hold, that the lot for which the note in suit was given, was not a part of the homestead of Kron, and appellees, therefore, failed to show any valid defense to excuse them from its payment.

The judgment is reversed and the cause remanded.