## J. M. KEITH v. WM. HYNDMAN.

### (Case No. 4654.)

1. HOMESTEAD — BLENDING OF RURAL AND URBAN — BURDEN OF PROOF.— Ordinarily there can be no blending of homestead rights so that the exemption can be partly in town and partly in the country; and the burden of establishing facts making a case an exception to this rule devolved on him whose residence and place of business were in town, and who claimed, as part of his homestead, a separate ten-acre tract, one thousand yards distant from his residence, and lying partly outside of the corporate limits.

2. SAME — EVIDENCE INSUFFICIENT.— Where proof was not made showing, *prima facie*, that any part of the ten-acre tract within the corporate limits was used for homestead purposes, or that it was acquired and improved previous to the incorporation of the town and designation of its boundaries, in view, too, of the distance of the ten acres from the residence, the evidence was insufficient to establish its exemption.

APPEAL from Navarro. Tried below before the Hon. L. D. Bradley.

This suit was brought by J. M. Keith against Wm. Hyndman to recover a tract of land containing ten acres, described as a part of

the Rachel Leach tract survey, lying three-fourths of a mile north-east of the town of Corsicana. The plaintiff's title was derived through a sheriff's sale and deed to the plaintiff as purchaser; sale made to satisfy a judgment in favor of the plaintiff against the defendant; deed dated 3d day of May, 1881. The land in controversy was acquired by the defendant and his wife by a deed of convey-ance from Laura West to Ladusca B. Hyndman, the wife of de-fendant, which conveyance embraced also a lot in the town of Corsicana. The deed describes the ten-acre tract as being a part of the Rachel Leach survey, "one mile N. of Corsicana in Navarro county."

The defendant answered by a general denial, the general issue of "not guilty," and special plea setting up the defense of homestead exemption, the defendant being the head of a family.

A jury was waived, cause submitted to the court upon the facts as well as the law, and judgment for the defendant.

The defendant's residence was in the town of Corsicana, situate upon the lot which was conveyed together with the ten acres of land in controversy in the same deed. The ten-acre tract is one thousand yards from the residence; the defendant's blacksmith shop, which he worked at the time of the levy and sale, was situated on a lot different from that of his residence. A portion of the ten-acre tract or lot was not within the corporation limits; the evidence did not show with certainty where the line ran; the city marshal testified that there had been two or three surveys made of the lines of the corporation, which differed with each other. There was upon the tract in question a tenement house, garden and stable, which said witness thought were upon that part of the land which is out-side of the corporate limits of the town, and that the line passes through that portion in which the fruit trees are planted. The wit-ness said further that he is informed by a certain surveyor that a small part of the lot on the north side, some two or three acres, is not in the corporation limits. The defendant also testified that he had recently learned that a small portion of the upper edge of the tract was beyond the corporate limits.

The defendant testified that soon after purchasing the ten-acre tract he fenced it in, planted it partly in grape vines; afterwards, the grapes failing, he planted an orchard, and had a garden on the prem-ises. That the property has been used for five years past for a gar-den, orchard, and, for the past year or two, as a place for taking care of defendant's horses; that his poultry were kept and raised on that lot for the use of his family. The defendant and his wife both

testified to various circumstances and facts tending to show the exclusive use of the lot in controversy to have been made for the convenience and benefit of the family in connection with the house or place of residence in town, and not as a source of profit otherwise; as for instance, by renting the premises for money, or to sell the produce raised upon them.

Mrs. Hyndman testified that, before any levy or sale of the property, she engaged Mrs. Magee to attend to her poultry on the lot; that her husband has had men to look after the garden, orchard and stock on the lot from year to year since its purchase. That they have always used the lot for the purposes of orchard, garden and poultry yard, for supplying their table, and that they had never charged rent to any person they had had on the lot.

Mrs. Magee's testimony corroborated the statement which Mrs. Hyndman made concerning her occupancy, and stated that she had never been charged any rent for the occupancy of the place.

Thomas Dallashide testified that he had cultivated the orchard and garden on the lot during the year 1881. He had raised about a bale of cotton on it, and was not charged any rent. That he furnished Mr. Hyndman's family with vegetables, after supplying his own family.

*Lee & Damon* and *R. S. Neblett*, for appellant.

I. In order to render property exempt as homestead, it must be used for the purposes of a home, or as a place to exercise the business of the head of the family. The defendant never has resided on the lot in controversy. At the time of the levy of the execution, defendant was residing on a lot in the city of Corsicana, one thousand yards distant from this property, where he had a good two-story dwelling-house, nice shrubbery, walks and gardens, horse-lots, cribs and barns and a family garden, wells and cisterns, and all the conveniences and comforts of a home; a short distance from his residence, and on another and different lot, is his blacksmith shop, a neat, comfortable brick, where he pursued his calling as a blacksmith. The lot in controversy was occupied by a man in defendant's employ, who cultivated the place mostly in cotton. On this place near the tenant house was a small family garden, planted and cultivated by defendant's tenant in vegetables. From this garden the tenant sometimes carried vegetables to the defendant's family; the garden was the tenant's garden. The cotton raised on the premises was divided equally between the defendant and his tenant. Const. 1875, art.

XVI, sec. 51; Iken & Co. *v.* Olenick, 42 Tex., 198; Philleo *v.* Smalley, 23 Tex., 498; H. & G. N. R. R. Co. *v.* Winter, 44 Tex., 598; Moreland *v.* Barnhart, 44 Tex., 275; Franklin *v.* Coffee, 18 Tex., 413.

II. The term lot or lots used in the constitution must be taken and construed in the popular sense of those terms, and when so used never would be considered as embracing land in the jurisdictional limits of the corporation, not connected with the limits of the city. The land in controversy is described as ten acres, a part of the Rachel Leach survey, about one mile north of Corsicana. It is described by field notes, calling for courses and distances, and giving those distances in varas. It is all enclosed together as a farm, has but one house on it, is cultivated in cotton, and to all intents and purposes is a farm. It is not laid off into streets and squares. A large creek separates it from the city; a portion of it is within the jurisdictional limits of the city, and a portion, including the house and garden, is outside those limits. Taylor *v.* Boulware, 17 Tex., 79; Bassett *v.* Messner, 30 Tex., 604; Iken *v.* Olenick, 42 Tex., 195; Rogers *v.* Ragland, 42 Tex., 442. See the able brief of Phillips, Lackey & Stayton in the case last cited, 42 Tex., 428.

III. The defendant is entitled to only one homestead, which must be wholly rural or wholly urban.

IV. To exempt property as a homestead it must be used either as a home or place of business, or both, and the use must be of the property itself and not of the fruits and revenues derived from the property. Iken & Co. *v.* Olenick, 44 Tex., 195; Thompson on Homesteads, §§ 130, 131, 132, 133; Evans *v.* Womack, 48 Tex., 231; Peregoy *v.* Kottwitz, 54 Tex., 497; Andrews *v.* Hagadon, id., 575.

V. The land in controversy, consisting of ten acres, most of which is in the city, and the appellee not residing thereon, only so much of the land in the corporation as is actually used for the purposes of the home will be exempt. Franklin *v.* Coffee, 18 Tex., 413; Peregoy *v.* Kottwitz, 54 Tex., 501; Andrews *v.* Hagadon, id., 571; Thompson on Homesteads, §§ 131, 132, 133; Clark *v.* Nolan, 38 Tex., 422.

VI. Where a party resides in a city proper, and uses two or three acres outside of the corporate limits which is not connected with nor adjacent to the residence lot, the land being out of the jurisdictional limits of the city, will not be exempt as a part of the homestead. Iken & Co. *v.* Olenick, 42 Tex., 195; Rogers *v.* Ragland, id., 442.

[No briefs for appellee have reached the Reporter.]

WALKER, P. J. COM. APP.— The constitutional provision (section 51 of article XVI, Const. of 1876) defines both of the respective kinds of homesteads, rural and urban, as follows:

" The homestead, not in a town or city, shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon; the homestead in a city, town or village shall consist of lot or lots, not to exceed in value $5,000 at the time of their designation as the homestead, without reference to the value of any improvements thereon; provided, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family; provided, also, that any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired."

The defendant's homestead is urban, and therefore to determine its extent, and to fix its boundaries, it is essential to ascertain what portion of the lots or land owned by him within the limits of the town of Corsicana was used for the purposes of a home. The calling which the head of the family pursued, so far as we may infer from the evidence, was that of a blacksmith; and his place of business was the blacksmith shop described by a witness. The lot or tract of land certainly was not his place of business, and it is not claimed to be exempt under any such pretension as that it was so.

Evidently the urban homestead exemption which the law contemplates is confined to a lot or lots which are within, and not outside, the limits of the town or city; and it is restricted to such part only of a lot or lots as shall be used for the purposes of a home. The evidence shows, beyond controversy, that a portion of the ten-acre lot of ground in question was not within the limits of the town or city of Corsicana; and the only testimony which attempts to designate the locality of the dwelling-house on the lot in question, and the garden and stable, is that of Barrett, the city marshal, who gives it "as his information" on the subject, that those buildings and the garden are situated on that part of the land which is outside the corporate limits of the town, and that the line passes through that portion in which the fruit trees are planted.

The burden is upon the defendant to establish by evidence the facts necessary to protect his claim of homestead (see Iken v. Olenick, 42 Tex., 196), and the evidence fails to establish a *prima facie* case even, that that particular part of the contested lot which was used adjunctively to supply his family with vegetables, poultry, and to keep a horse upon, was at all within the limits of the corpora-

tion. Such being the case, the correlative fact in this connection is that the residue of the lot, and which is situated within the corporation, was not used for the purposes of a home; consequently neither portion of the lot of land forms any part of the defendant's town or city homestead.

Assuming that the tract of land or lot in question was partly without the limits of the incorporated town of Corsicana, in which town the defendant resided, the rule applies, as it is declared in Iken v. Olenick, 42 Tex., 195, in the opinion of Justice Moore, to the effect that ordinarily there can be no blending of homestead rights so that the exemption can be partly in town and partly in the country (unless, as he added, under some very extraordinary circumstances, citing Taylor v. Boulware, 17 Tex., 77). There appears to be nothing in the evidence to remove this case from the application of the ordinary rule so as to bring it within any supposed exception or qualification, there being nothing in the facts of the case which suggest to the mind a doubt as to the fact that the defendant acquired and improved both his home residence as well as the lot in dispute, subsequently to the incorporation of, and prescribing the boundary line of the town, which seems to have run transversely through the lot in controversy. Consequently the evidence does not support the conclusion that any part of the lot within the boundaries of the city of Corsicana was used for the purposes of a home by the defendant; at all events, the defendant certainly failed to show that any portion of the lot which was used for his home purposes was situated within the city limits. The best that can be said for the defendant's case on that point is that it was doubtful whether such portion thus used was within the limits, and the preponderance of testimony was against the defendant. The evidence did not indicate any specific portion of the tract as being exempt; therefore there was not afforded a basis for a judgment in his favor, either for the whole or any part of the lot.

The evidence does not show that the whole of the lot was used in a manner which could be properly designated as the "purposes of a home," in the sense which is meant in the constitutional provision heretofore quoted. "Whether such lot or lots are part of the homestead is a question of fact for the jury, to be determined by the evidence; and there are two requisites that must concur to make them a part of the homestead: 1st. The owner must intend the property as a part of his homestead. 2d. He must in some way use it as such." Andrews v. Hagadon, 54 Tex., 571. This test finds proper place for its application in this case. It is a question

of fact to determine whether the defendant did in fact intend or dedicate the property in question, or any part of it, as a part of his homestead, and if he did do so, whether he did use the whole or a part of the tract, parcel or lot of land as a part of his homestead, or "for the purposes of his home."

Facts and questions relating to urban homesteads were discussed and determined by the supreme court, analogous to those which are here presented, in the cases of Rogers v. Ragland, 42 Tex., 422, and Evans v. Womack, 48 Tex., 232, but they arose upon the construction and meaning of constitutional homestead provisions which were contained in previous constitutions to that of 1876, under which this case now before us has arisen. Chief Justice Roberts, in delivering the opinion in Evans v. Womack, notes the fact that the decision of that case is made in reference to the constitution and laws of 1860. In previous constitutions there did not exist a clause of qualification or proviso, as contained in our present constitution, as follows: "provided, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family."

We do not perceive any meaning contained in the clause which has been just quoted to render inapplicable the cases cited to the facts of this case. We believe, therefore, that the defendant cannot claim as exempt from forced sale any greater portion of the tract in question than such part of it, if any, as was used for a garden for the use of his family; and of a poultry house or yard, if any there was, actually dedicated to such use,— for use of his home; and such other like portions exempted for similar reasons as these. It is not intended by our present constitution, any more than was it by those which preceded it, that the use which might be made of lots, though conducing to the advantage of the family and its support — as for farm, fruit, or vegetable products — constitute such lots a part of the homestead; but, in order to constitute them a part of the homestead, the cultivation and use made of the lots which furnish such products as are above suggested, must be in such mode and manner as is consistent with the premises in question being appurtenant to,— a part of the home establishment, even though disconnected therefrom by streets, squares and blocks.

To avoid misconception as to what otherwise might be construed to be the scope of this opinion in regard to the conclusiveness of the corporation boundary line leaving a part of the premises in dispute beyond the town limits, we add that we do not determine in this case that such boundary line establishes, under all circumstances, a

conclusive and unvarying standard whereby the extent of a town or city homestead is to be determined. We have already in the course of this opinion indicated that we recognize the rule with its exception as stated by Justice Moore in Iken *v*. Olenick, *supra*. We mean in this case to decide, so far as that question is involved, that in view of the distance of the three acres which were outside of the city limits from the defendant's domicile, and of the mode of its use, that it cannot be regarded as a lot or lots exempted as a part of the city homestead, it not being in the meaning of the constitution a lot within a town or city; that the facts of the case require that it shall be treated as rural in character, and subject to the ordinary rule which we have quoted as having been stated in Iken *v*. Olenick.

We conclude that the judgment ought to be reversed and the cause remanded.

REVERSED AND REMANDED.

[Transferred to Tyler, and opinion delivered October 24, 1882.]