# Supreme Court of Texas

No. 22-0485

Bexar Appraisal District,
*Petitioner*,

v.

Yvondia Johnson,
*Respondent*

On Petition for Review from the
Court of Appeals for the Fourth District of Texas

**Argued January 11, 2024**

JUSTICE HUDDLE delivered the opinion of the Court, in which Chief Justice Hecht, Justice Lehrmann, Justice Boyd, Justice Devine, Justice Busby, and Justice Bland joined.

JUSTICE YOUNG filed a dissenting opinion, in which Justice Blacklock joined.

In 2009, the Legislature created a residence homestead tax exemption for veterans who are 100% disabled. *See* TEX. TAX CODE § 11.131(b). Yvondia Johnson is a 100% disabled U.S. Air Force veteran who claimed the exemption for her principal residence, a home in Converse, Texas. It is undisputed that Bexar Appraisal District, which

denied Ms. Johnson's application for the exemption, would have granted it if she were unmarried. The question we must answer is whether the Tax Code bars Ms. Johnson's claim to the exemption because her husband, from whom she is separated and who is also a 100% disabled U.S. military veteran, claims the same exemption for his principal residence, a home in San Antonio.

The court of appeals refused to engraft a one-per-married-couple limitation onto the statute. It concluded that the Tax Code bestows the exemption on each individual 100% disabled veteran who meets Section 11.131(b)'s express statutory requirements without regard to whether the veteran's spouse also claims the exemption on a separate residence homestead. We hold that the court of appeals' application of the statute was correct and thus affirm its judgment.

## I. Background

Yvondia and Gregory Johnson are married, and each is a 100% disabled U.S. Air Force veteran. In 2012, when they lived together in their jointly owned San Antonio home, Mr. Johnson applied for a tax exemption under Tax Code Section 11.131(b), which benefits 100% disabled veterans by exempting the complete value of their residence homesteads from ad valorem tax. Years later, the Johnsons jointly bought another home in Converse, Texas. They later separated, with Ms. Johnson living at the Converse home while Mr. Johnson remained at the San Antonio residence. Ms. Johnson, herself a 100% disabled veteran, applied for a Section 11.131(b) exemption for the Converse residence for the year 2020. But Bexar Appraisal District refused the exemption, stating as its rationale "[s]pouse claiming exemptions" at the

2

San Antonio residence.  Ms. Johnson protested the appraisal district's decision to the Bexar Appraisal Review Board under Chapter 41 of the Tax Code.  *See id.* § 41.41(a)(4) (permitting a property owner to protest the denial of an exemption to the appraisal review board).  After the review board denied her protest, Ms. Johnson sued.  *See id.* § 42.01(a)(1)(A) (allowing a property owner to appeal the review board's order in district court).

In the trial court, the appraisal district moved for summary judgment, arguing that Ms. Johnson was ineligible for a Section 11.131(b) exemption because her husband claimed the same exemption on a different home they jointly owned.  Ms. Johnson also sought summary judgment, arguing that the evidence conclusively established she met the exemption's requirements.  The trial court granted summary judgment for the appraisal district and denied Ms. Johnson's motion.  Ms. Johnson appealed, and the court of appeals reversed and rendered judgment in her favor.  683 S.W.3d 92, 99 (Tex. App.—San Antonio 2022).

## II.  Applicable Law

### A.  Statutory interpretation

In interpreting a statute, we must "ascertain and give effect to the Legislature's intent."  *Odyssey 2020 Acad., Inc. v. Galveston Cent. Appraisal Dist.*, 624 S.W.3d 535, 540 (Tex. 2021) (quoting *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009)).  "We look for that intent first and foremost in the plain language of the constitutional or statutory provision."  *Id.*  "If the statute's plain language is unambiguous, we interpret its plain meaning, presuming that the

3

Legislature intended for each of the statute's words to have a purpose and that the Legislature purposefully omitted words it did not include." *Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019). Statutory terms usually bear their common, ordinary meaning. *Id.* When a statute defines one of its terms, however, "[w]e do not look to the ordinary, or commonly understood, meaning of the term because the Legislature has supplied its own definition, which we are bound to follow." *Entergy*, 282 S.W.3d at 437.

"Statutory exemptions from taxation are subject to strict construction because they undermine equality and uniformity by placing a greater burden on some taxpaying businesses and individuals rather than placing the burden on all taxpayers equally." *Odyssey 2020*, 624 S.W.3d at 540 (quoting *N. Alamo Water Supply Corp. v. Willacy Cnty. Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991)). We have held that "an exemption cannot be raised by implication, but must affirmatively appear." *Id.* (quoting *Bullock v. Nat'l Bancshares Corp.*, 584 S.W.2d 268, 272 (Tex. 1979)). "The taxpayer has the burden to clearly show that an exemption applies, and all doubts are resolved against the granting of an exemption." *Id.* at 541 (internal quotation marks omitted).

Any doubts, however, must arise "from legal text, not from gut instincts or guesses." *Miles v. Tex. Cent. R.R. & Infrastructure, Inc.*, 647 S.W.3d 613, 633 (Tex. 2022) (Young, J., concurring). Our analysis does not turn on speculation as to whether the Legislature envisioned a particular result but rather depends on what the statute's text "clearly says." *Id.* "We must enforce the statute 'as written' and 'refrain from

rewriting text that lawmakers chose.'" *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 562 (Tex. 2014) (plurality op.) (quoting *Entergy*, 282 S.W.3d at 443); *see also Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 629 (Tex. 2013) ("[W]e read unambiguous statutes as they are written, not as they make the most policy sense."). Consistent with that approach, construing tax "exemptions narrowly does not mean disregarding the words used by the Legislature." *Odyssey 2020*, 624 S.W.3d at 541.

## B. Constitutional and statutory benefits of residence homestead ownership

Since 1866, the Texas Constitution has protected a family's homestead from forced sale.[1] In considering the nature and scope of this protection in the 1869 Constitution, we noted that the term "homestead" "conveys the idea of a house and place connected therewith" and adopted the dictionary definition as "[t]he place of the house; a mansion-house with the adjoining land." *Herman Iken & Co. v. Olenick*, 42 Tex. 195, 201 (1874) (citation omitted). And we noted that the 1869 Constitution limited its protection against forced sale to property used for "homestead purposes"; it did not extend, for example, to a property used only for commercial purposes. *Id.* at 202.

---

[1] *See* TEX. CONST. art. XVI, § 50 ("The homestead of a family shall be, and is hereby protected from forced sale . . . .") (amended 1973); TEX. CONST. OF 1869, art. XII, § 15 ("The homestead of a family . . . shall not be subject to forced sale . . . ."); TEX. CONST. OF 1866, art. VII, § 22 ("The Legislature shall have power to protect by law from forced sale, a certain portion of the property of all heads of families. The homestead of a family . . . shall not be subject to forced sale . . . .").

5

We have also held that the constitutional protection against a homestead's forced sale does not extend to every individual. Rather, *Crowder v. Union National Bank of Houston*, 261 S.W. 375 (Tex. [Comm'n Op.] 1924), noted that "[t]he homestead is by our Constitution given to the family. It is given neither to the husband nor the wife . . . ." *Id.* at 377. In other words, *Crowder* held that the constitutional protections against forced sale are not doled out en masse or on a one-per-person basis. Rather, as the text at the time made clear, the constitutional safeguard protected a family unit. *See* TEX. CONST. art. XVI, § 50 ("The homestead *of a family* shall be, and is hereby protected from forced sale . . . .") (emphasis added) (amended 1973). Thus, spouses could not each separately avail themselves of the constitutional protection against forced sale because, while married, they were "constituent members of the same family." *Crowder*, 261 S.W. at 377. The longstanding historical rule thus had been that *constitutional* homestead protection against forced sale carries with it a one-per-family limit.

After *Crowder*, a different type of benefit afforded to homestead owners emerged. Whereas earlier constitutional protection had shielded homestead owners from forced sales, a series of constitutional amendments beginning in 1932 birthed an entirely new kind of benefit: the residence homestead tax exemption.[2] Moved in 1948 to Article VIII, Section 1-b, where it remains today, that provision declared:

---

[2] *See* Tex. H.J. Res. 6, 42d Leg., R.S., 1932 Tex. Gen. Laws 941 (proposing creation of a constitutional amendment to exempt $3,000 of the assessed taxable value of a residence homestead).

6

> Three Thousand Dollars ($3,000) of the assessed taxable
> value of all residence homesteads as now defined by law
> shall be exempt from all taxation for all State purposes.

TEX. CONST. art. VIII, § 1-b (amended 1973). Quite plausibly, Section 1-b's use of the phrase "as now defined by law" incorporated *Crowder*'s limitations on the use to which property must be put to qualify as a residence homestead and on who may claim the exemption.

Further constitutional amendments would bring clarity. In 1973, Texans again amended the Constitution, resolving any doubt about who could claim constitutional protection against forced sale. Whereas the 1876 Constitution had afforded it only to the homestead "of a family," the 1973 amendments extended this constitutional protection to also cover a homestead "of a single adult person." Tex. H.J. Res. 7, 63d Leg., R.S., 1973 Tex. Gen. Laws 2478 (current version at TEX. CONST. art. XVI, § 50(a)). This reflected the reality that "Texas ha[d] moved beyond the traditional protection of the family and the aged, and ha[d] extended the homestead exemption to single persons who would never have qualified under the old laws." Lynda Beck Fenwick, Note, *Effects of Extending the Homestead Exemption to Single Adults*, 26 BAYLOR L. REV. 658, 658 (1974).

A mere five years later, Texans adopted yet another constitutional amendment—this one regarding the residence homestead tax exemption. But rather than amend the scope of "residence homestead" within the Constitution itself as they did with protection against forced sales in 1973, the People of Texas staked out a different path for crafting eligibility requirements for residence homestead tax exemptions: they bestowed the power and duty to define "residence

7

homestead" *upon the Legislature.* *See* TEX. CONST. art. VIII, § 1-b(c) (empowering "[t]he legislature by general law [to] define residence homestead for purposes of this section").

The Legislature exercised that power shortly thereafter and it took a new approach. It defined a "residence homestead" itself[3] and codified it as Section 11.13(j) of the new Property Tax Code.[4] Importantly, this statutory definition refers to the necessary characteristics of the physical structure and to the purposes for which it is used, but it says nothing about the familial or marital status of its owner or occupier. Largely unchanged since its adoption, it is this statutory definition, not *Crowder* or other cases construing Article XVI, that defines "residence homestead" for purposes of determining eligibility for a residence homestead tax exemption:

> For purposes of this section:
>
>> (1) "Residence homestead" means a structure (including a mobile home) or a separately secured and occupied portion of a structure (together with the land, not to exceed 20 acres, and improvements used in the residential occupancy of the structure, if the structure and the land and improvements have identical ownership) that:
>>
>>> (A) is owned by one or more individuals, either directly or through a beneficial interest in a qualifying trust;

---

[3] *See* Act of May 28, 1979, 66th Leg., R.S., ch. 302, art. 6, § 1, 1979 Tex. Gen. Laws 680, 689.

[4] Act of May 26, 1979, 66th Leg., R.S., ch. 841, § 1, sec. 11.13(j), 1979 Tex. Gen. Laws 2217, 2235.

(B) is designed or adapted for human residence;

(C) is used as a residence; and

(D) is occupied as the individual's principal residence by an owner, by an owner's surviving spouse who has a life estate in the property, or, for property owned through a beneficial interest in a qualifying trust, by a trustor or beneficiary of the trust who qualifies for the exemption.

TEX. TAX CODE § 11.13(j).

The work of limiting tax exemptions on a one-per-family or one-per-couple basis is done elsewhere. Some limitations on *who* may claim a tax exemption reside in the provision that creates the exemption itself. Notably, four residence homestead tax exemptions existed at the time of Section 11.13(j)'s adoption. *See id.* § 11.13(a) (general residence homestead exemption), (b) (school district residence homestead exemption), (c)–(d) (residence homestead exemptions for individuals who are disabled or at least sixty-five years of age).[5] Each specifies *to whom* the exemption is granted. Subsection (a), which derives from Article VIII, Section 1-b of the Constitution, expressly states who is entitled to claim a Section 11.13(a) exemption: a "family or single adult." *Id.* § 11.13(a). The other three Section 11.13 exemptions, by contrast, specify that they benefit and may be claimed by "[a]n adult," "an adult who is disabled or is 65 or older," or "an individual who is disabled or is 65 or older." *Id.* § 11.13(b)–(d). These distinctions make clear that the

---

[5] *See* Act of May 26, 1979, 66th Leg., R.S., ch. 841, § 1, sec. 11.13, 1979 Tex. Gen. Laws 2217, 2234–35.

9

Legislature deliberately decided and specified, with precision, who could claim each exemption.

Little changed since 1980, these same four exemptions remain in Section 11.13 today, where they are subject to several limits to prohibit double-dipping.  In particular, Section 11.13(h) forbids use of more than one of these exemptions for a single residence homestead (i.e., stacking). It also disallows use of any one of these exemptions for more than one residence homestead in the same year (i.e., spreading).[6]  The four exemptions in Section 11.13 are also subject to a further limitation: anyone seeking to claim them must state that she "does not claim an exemption under [Section 11.13] on another residence homestead in this state."  *Id.* § 11.43(j)(2).

---

[6] The full text of Section 11.13(h) states:

Joint, community, or successive owners may not each receive the same exemption provided by or pursuant to this section for the same residence homestead in the same year.  An eligible disabled person who is 65 or older may not receive both a disabled and an elderly residence homestead exemption from the same taxing unit in the same year but may choose either if a taxing unit has adopted both.  An eligible disabled person who is 65 or older may receive both a disabled and an elderly residence homestead exemption in the same year if the person receives the exemptions with respect to taxes levied by different taxing units.  A person may not receive an exemption under this section for more than one residence homestead in the same year. An heir property owner who qualifies heir property as the owner's residence homestead under this chapter is considered the sole recipient of any exemption granted to the owner for the residence homestead by or pursuant to this section.

TEX. TAX CODE § 11.13(h).

The four Section 11.13 exemptions represented the entire catalogue of residence homestead tax exemptions for more than three decades. Then, Texans amended the Constitution again in 2007 to pave the way for a series of new exemptions, including the one at issue here. The 2007 amendment to Article VIII authorized the Legislature to exempt from ad valorem taxation all or part of the market value of a 100% or totally disabled veteran's residence homestead:

> The legislature by general law may exempt from ad valorem taxation all or part of the market value of the residence homestead of a disabled veteran who is certified as having a service-connected disability with a disability rating of 100 percent or totally disabled and may provide additional eligibility requirements for the exemption.

TEX. CONST. art. VIII, § 1-b(i).

The Legislature quickly acted, choosing to exempt all—not just part—of the market value of a disabled veteran's residence homestead from taxation.[7] Importantly, the Legislature made the exemption available to an individual "disabled veteran" who qualifies. It did not limit its availability to "[a] family or single adult" as it did for the general $3,000 residence homestead exemption. *See* TEX. TAX CODE § 11.13(a). And rather than add the new disabled-veteran exemption to

---

[7] The statutory text reads:

> A disabled veteran who has been awarded by the [U.S.] Department of Veterans Affairs . . . 100 percent disability compensation due to a service-connected disability and a rating of 100 percent disabled . . . is entitled to an exemption from taxation of the total appraised value of the veteran's residence homestead.

TEX. TAX CODE § 11.131(b).

11

Section 11.13, which would have made it subject to the various limitations found in Sections 11.13(h) and 11.43(j)(2), the Legislature placed the disabled-veteran exemption in Section 11.131, outside those limitations' reach. *See id.* §§ 11.13(h) (limiting its reach to exemptions in "this section"), 11.43(j) (expressly applying to "an application for a residence homestead exemption . . . authorized by Section 11.13").

But that is not to say that Section 11.131(b) operates wholly independent of Section 11.13. On the contrary, Section 11.131 makes clear that "residence homestead," as that term is used in Section 11.131(b), "has the meaning assigned by Section 11.13." *Id.* § 11.131(a)(2). Section 11.131 thus points to and incorporates the definition of "residence homestead" in Section 11.13(j)(1).

Since the disabled-veteran exemption was adopted, the Legislature has codified other residence homestead exemptions.[8] Like Section 11.131(b), these newer exemptions benefit specific classes of residence homestead owners: partially disabled veterans and surviving spouses of armed services members or first responders killed in the line of duty. *See id.* §§ 11.132 (exemption for the donated residence of a partially disabled veteran), 11.133 (exemption for the surviving spouse of an armed services member killed in the line of duty), 11.134 (exemption for the surviving spouse of a first responder killed in the line of duty). Like the section codifying the 100%-disabled-veteran exemption at issue here, the Legislature placed these residence

---

[8] These exemptions were also preceded by constitutional amendments. *See* TEX. CONST. art. VIII, § 1-b(l), (m), (o).

12

homestead exemptions outside Section 11.13, beyond the reach of Section 11.13(h)'s and Section 11.43(j)(2)'s limitations.

## III. Analysis

Where the text of a statute is clear, our only role is to apply the statute as written. Section 11.131(b) of the Tax Code expressly and unambiguously states that a 100% disabled veteran is entitled to a tax exemption for her residence homestead as defined by Section 11.13. *Id.* § 11.131(b) ("A disabled veteran who has been awarded . . . 100 percent disability compensation due to a service-connected disability and a rating of 100 percent disabled . . . is entitled to an exemption from taxation . . . ."). The appraisal district agrees that Ms. Johnson is a 100% disabled veteran and concedes that Ms. Johnson's principal residence, the Converse home, satisfies Section 11.13(j)(1)'s requirements for a "residence homestead." Because the appraisal district does not contend the statute is ambiguous, that should be enough to conclude, based on a plain reading of the statutory text, that Ms. Johnson is entitled to the exemption. Yet the appraisal district urges that the statute's defined term—"residence homestead"—means something more, or something other, than what the statute says. It argues, first, that this Court's cases on the constitutional protection against forced sale of a homestead imbue the statutory term "residence homestead" with a meaning other than that found in the statute. Second, the appraisal district argues that statutory limitations that expressly state they apply to Section 11.13 exemptions must also apply to the exemption in Section 11.131(b). Finally, various amici echo the appraisal district's final reason for asking the Court to depart from the

13

statute's plain meaning: applying the statutory exemption as written, they contend, will open the floodgates to unmeritorious claims for other residence homestead exemptions. We address each argument in turn.

**A. The Legislature bestowed the Section 11.131(b) exemption on individual disabled veterans.**

Section 11.131(b) of the Tax Code unambiguously states: "A disabled veteran who has been awarded . . . 100 percent disability compensation due to a service-connected disability and a rating of 100 percent disabled . . . is entitled to an exemption from taxation of the total appraised value of the veteran's residence homestead." *Id.* § 11.131(b). There is no dispute Ms. Johnson is a 100% disabled veteran with a service-connected disability. Nor is there any dispute that the Converse home and Ms. Johnson's use of it satisfy Section 11.13(j)(1)'s express requirements. *See id.* §§ 11.131(a)(2) (assigning "residence homestead" the meaning given in Section 11.13), 11.13(j)(1) (defining "residence homestead" as, among other things, a structure designed for human use, used as a residence, and occupied as an owner's principal residence).

Nevertheless, the appraisal district advances various reasons that it contends preclude Ms. Johnson from benefitting from the exemption. The appraisal district first argues that Section 11.131(b)'s use of the term "homestead" carries a hidden, atextual limitation: one per family. In support, the appraisal district points us to older cases—*Herman Iken* and *Crowder*—which it claims demonstrate that the term "homestead" has always borne a one-per-family limitation. Neither case supports the appraisal district's "ordinary meaning" argument.

In *Herman Iken*, we acknowledged that "[t]he leading idea in [a constitutional homestead] exemption, as we have said, is to furnish a

14

home and shelter to the family." 42 Tex. at 199. But that was not because the word "homestead" itself imposed such a limitation. In fact, *Herman Iken* did not consider whether a husband and wife each could claim constitutional homestead protection if they maintained separate homesteads. Instead, the case arose over a dispute with creditors who sought to seize property owned by the debtor couple on which they maintained a commercial warehouse and did not live. *See id.* at 196. We said the word homestead "conveys the idea of a house and place connected therewith" and defined homestead as "[t]he place of the house; a mansion-house with the adjoining land." *Id.* at 201 (citation omitted). Because the tract at issue was used for commercial rather than "homestead purposes," it "was not a part of the homestead." *Id.* at 202–03. What *Herman Iken* says about the meaning of the word "homestead," then, is that it necessarily connotes the use of the property as a place where one lives. The Legislature's definition of "residence homestead" in Tax Code Section 11.13(j)(1) is consistent with that understanding because it requires, among other things, that the residence homestead be "occupied as the individual's principal residence by an owner." TEX. TAX CODE § 11.13(j)(1)(D). All agree that the Converse home is Ms. Johnson's principal residence.

*Crowder*, on the other hand, actually addressed whether a husband and wife could establish separate family homesteads. The court answered "no," but not because the definition of the word "homestead" precluded it. *Crowder* involved a dispute about whether the western 80 acres of a 160-acre homestead tract—conveyed to the wife after the couple separated and planned on divorcing—lost its

homestead character upon the execution of the deed. 261 S.W. at 376–77. Despite the partition, the Commission of Appeals concluded there was a fact issue as to whether the tract remained part of the homestead after the couple reconciled. *Id.* at 377. It reasoned that "[t]he homestead is by our Constitution given to the family. It is given neither to the husband nor the wife . . . ." *Id.* As a result, "[a] family can have but one rural homestead." *Id.* Because the husband and wife were still married, they were "constituent members of the same family." *Id.* Merely deeding half of the property's legal title to the wife as her separate property, without more, did not constitute an abandonment of the family's constitutional homestead protection. *Id.*

Absent from *Crowder* is any attempt to give a meaning to the word "homestead." To the extent *Crowder* restricted the ability of a married couple to establish separate constitutional homesteads, it was not because of a meaning inherent in the word "homestead," which we previously defined in *Herman Iken.* Instead, *Crowder*'s analysis turned on *who* could establish homestead protection. The *who*—a family—was dictated by the text of the Constitution, which at that time explicitly limited homestead protection to the *family.* *See* TEX. CONST. art. XVI, § 50 (protecting "[t]he homestead of a family") (amended 1973); *Crowder,* 261 S.W. at 377 ("The homestead is by our Constitution given to the family.").

Neither Section 11.131(b) of the Tax Code nor Article VIII, Section 1-b(i) includes such a one-per-family limitation. Section 11.131(b) plainly states the exemption is awarded not to a family, a married couple, or a single adult but, simply, to a "disabled

16

veteran," the individual, without limitation.[9]  *See* TEX. TAX CODE § 11.131(b) ("A disabled veteran . . . is entitled to an exemption . . . .").

The appraisal district urges that the references to "family" and "single adult" found in both Section 11.13(a) of the Tax Code and Article XVI, Section 50 of the Constitution must inform the meaning of the term "homestead" in Section 11.131(b). But this ignores the fact that the Constitution itself gives the Legislature the authority to define the term "residence homestead" for purposes of defining a property's eligibility for homestead tax exemptions. TEX. CONST. art. VIII, § 1-b(c) ("The legislature by general law may define residence homestead for purposes of this section."). The Legislature codified that express meaning in Tax Code Section 11.13(j)(1), and that definition nowhere mentions a one-per-family or one-per-couple limitation.[10]

---

[9] The thrust of the dissent is that the mere use of the word "homestead" necessarily carries with it the one-per-family limit based on how it is used in other constitutional and statutory provisions. *See post* at 19 (Young, J., dissenting) (citing TEX. CONST. art. XVI, § 51; TEX. PROP. CODE § 41.002). Yet this ignores crucial constitutional and statutory text that signals when the one-per-family limit does and does not apply. For instance, the limit applies to the forced-sale protection described in Article XVI, Sections 50–52 because the Constitution specifies that protection applies to "[t]he homestead of a family, or of a single adult person." TEX. CONST. art. XVI, § 50. Similarly, the Property Code's exemption of a homestead from creditors' claims is limited by the statute's use of the phrase "homestead of a family or a single, adult person." TEX. PROP. CODE § 41.002(a). There is no similar limiting language in Tax Code Section 11.131(b) or Section 11.13(j)(1). Just as we give meaning to text where it exists, we must too give meaning to its absence.

[10] Our dissenting colleagues question our straightforward textual approach on the ground that there might be constitutional limitations on the Legislature's ability to define a term the Constitution expressly gives the Legislature the power to define. *See post* at 26–29 (Young, J., dissenting). Yet they never explain how the judicial branch would get the power to constrain

So even assuming our dissenting colleagues are correct about the ordinary meaning of "homestead," it is the statutory definition of "residence homestead"—not the ordinary meaning of "homestead"—that controls our analysis. *See Entergy*, 282 S.W.3d at 437 ("We do not look to the ordinary, or commonly understood, meaning of the term because the Legislature has supplied its own definition, which we are bound to follow."). Cases construing homestead protection in a different context (i.e., protection from forced sale) do not answer whether Ms. Johnson qualifies for the Section 11.131(b) exemption.

Section 11.131(b) is clear: a disabled veteran is entitled to a tax exemption for his or her residence homestead. Section 11.13(j)(1) is clear, too, and unambiguously sets forth the requirements property must satisfy to qualify as someone's residence homestead. The statute's requirements, even strictly construed, are not ambiguous. Ms. Johnson and the Converse home meet the statutory requirements—the appraisal district concedes it.

There is thus no basis to deny Ms. Johnson an exemption, as our dissenting colleagues would, under the guise of strictly construing the disabled-veteran exemption. *See post* at 30–32 (Young, J., dissenting). Strict construction requires us to "accord the language used by the Legislature a full meaning that will carry out its manifest purpose and intention in enacting the statute but confine the operation of the law to

how the Legislature exercises its express constitutional authority to define a term. In any event, we need not and do not decide whether the Legislature's definitional authority is unbounded for the simple reason that no party has hinted, let alone asserted, that the Legislature's definition of "residence homestead" in Tax Code Section 11.13(j)(1) is unconstitutional.

cases which plainly fall within its terms as well as its spirit and purpose." *Miles*, 647 S.W.3d at 619–20 (cleaned up). But strict construction "does not mean disregarding the words used by the Legislature," *Odyssey 2020*, 624 S.W.3d at 541, nor does it require us to ignore that the Legislature purposefully omitted others. The words the statute includes and omits, plus context, together demonstrate that the purpose of Section 11.131(b) was to afford residence homestead exemptions to disabled veterans. While doubts are resolved against exemptions, the anti-exemption preference arises only when doubt arises from the statute's text. Here, there is no such doubt.

## B. The other provisions of the Tax Code do not preclude Ms. Johnson from benefitting from Section 11.131(b).

The appraisal district argues that even if what it asserts to be the ordinary meaning of the term "homestead" does not bar Ms. Johnson's claim to the Section 11.131(b) exemption, other provisions in the Tax Code do. First, it asserts that Section 11.13(a)'s use of "family or single adult" prohibits Ms. Johnson from claiming the Section 11.131(b) exemption. Second, it argues that Section 11.13(h) prohibits her claim to the exemption. Third, it contends that Section 11.43(j)(2) bars Ms. Johnson from claiming the Section 11.131(b) exemption if Mr. Johnson is claiming an exemption for the San Antonio home. These arguments fail because none of these other limitations on the use of exemptions *in Section 11.13* applies to the exemption in Section 11.131.

Start with Section 11.13(a). The appraisal district argues that Section 11.13(a)'s providing a $3,000 general residence homestead exemption to "[a] family or single adult" demonstrates the Legislature's intent that any residence homestead exemption, including that in

19

Section 11.131(b), be limited to a family or single adult. The appraisal district posits that Section 11.13(a)'s use of the word "family" signals that the Legislature intended all residence homestead exemptions to be limited to one per family. We draw a different conclusion from Section 11.13(a): that the Legislature knows how to limit a particular exemption on a one-per-family basis. The fact that it did so in Section 11.13(a) but not Section 11.131(b) means that Section 11.131(b) bears no such limitation. *See Ineos USA, LLC v. Elmgren*, 505 S.W.3d 555, 564 (Tex. 2016) (noting that when the Legislature uses different language in different parts of a statute, we assume the Legislature meant something different). Certainly, the Legislature knows how to restrict an exemption's availability to one per family—as it did in Section 11.13(a)—and it made the decision not to in Section 11.131(b).

Similarly, the Legislature knew how to make Section 11.131(b) subject to Section 11.13(h)'s prohibitions on stacking and spreading— yet it did not. The appraisal district is correct that Section 11.13(h) of the Tax Code, for its part, limits availability of many residence homestead exemptions found in the Tax Code. It provides, for example, that "[j]oint, community, or successive owners may not each receive the same exemption . . . for the same residence homestead in the same year" and "[a] person may not receive an exemption . . . for more than one residence homestead in the same year." *Id.* § 11.13(h). The appraisal district argues this shows the Legislature's intent to prevent a homeowner from obtaining multiple residence homestead exemptions for one home or exemptions on multiple homes. That is true, but only for exemptions "provided by or pursuant to this section [11.13]" and

"under this section [11.13]," respectively. *Id.* The exemption Ms. Johnson seeks, though, is not in Section 11.13 and therefore not subject to limitations that apply only to Section 11.13. Engrafting Section 11.13(h)'s restrictions onto Section 11.131 would require us to ignore the phrase "in this section." *Id.* § 11.13(h). We should not. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 174 (2012) ("If possible, every word and every provision is to be given effect . . . . None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence.").[11] Doing so would nullify what we must presume was the Legislature's conscious choice to locate the disabled-veteran exemption outside Section 11.13 so that it would *not* be subject to the limitations in Section 11.13(h). *See Youngkin v. Hines*, 546 S.W.3d 675, 681 (Tex. 2018) (rejecting "attempts to add a requirement to [a] statute that does not exist in its text" because "injecting such a requirement into the [statute] would be disloyal to its enacted text").[12]

Finally, Tax Code Section 11.43(j) poses no bar to Ms. Johnson's claim to the exemption. Section 11.43(j) requires an applicant seeking an exemption under certain Tax Code sections to "state that the

---

[11] *See also Nat'l Credit Union Admin. v. First Nat'l Bank & Tr. Co.*, 522 U.S. 479, 501 (1998) (admonishing against interpretations that treat statutory terms as mere surplusage).

[12] That Section 11.13(h) exists is context demonstrating that the Legislature did not think—or intend—that using the phrase "residence homestead" inherently supplied the limitations found in Section 11.13(h). If it did, parts of Section 11.13(h) would be superfluous.

21

applicant does not claim an exemption under that section on another residence homestead in this state." TEX. TAX CODE § 11.43(j)(2). Section 11.43(j), however, covers only "a residence homestead exemption prescribed by the comptroller and authorized by Section 11.13." *Id.* § 11.43(j). As just discussed, Section 11.131(b)'s 100%-disabled-veteran exemption is not authorized by Section 11.13. It resides in a different home, Section 11.131.

"[T]he whole-text canon . . . calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts." SCALIA & GARNER, *supra*, at 167. Like the disabled-veteran exemption, the Legislature chose to house special residence homestead exemptions for partially disabled veterans, along with exemptions for surviving spouses of armed services members or first responders killed in the line of duty, in their own, independent sections of the Tax Code. TEX. TAX CODE §§ 11.131–.134. By doing so, the Legislature removed those exemptions from the reach of otherwise generally applicable limitations in Tax Code Section 11.13(h). The Legislature's choice is a reasonable policy choice. It certainly was one the Legislature had the discretion to make.

## C. Today's decision does not expand the availability of other homestead exemptions.

The appraisal district, along with various other appraisal districts as amici, also conjures a parade of horribles for appraisal districts across the state. But we do not ignore a statute's text to impose our "own judicial meaning" to reach a certain result, even if amici—or we—think the statute unwise. *Silguero*, 579 S.W.3d at 59. Instead, we must "refrain from rewriting text that lawmakers chose." *Jaster*, 438

S.W.3d at 562 (quoting *Entergy*, 282 S.W.3d at 443). The plain text of Section 11.131 makes clear that Ms. Johnson is eligible for a disabled-veteran residence homestead exemption for her principal residence in Converse, and we cannot avoid that result merely out of concern for its consequences.

In any event, we believe the appraisal districts' concerns about the proverbial floodgates are unfounded. First and foremost, nothing in the Court's decision should—or can—be read to expand the availability of constitutional forced-sale protection. As demonstrated above, constitutional forced-sale protection is a distinct concept that remains limited to a "family [or] single adult." TEX. CONST. art. XVI, § 50(a).

Second, the Legislature's definition of "residence homestead" restricts qualification to a structure "occupied as the individual's principal residence by an owner." TEX. TAX CODE § 11.13(j)(1)(D). A taxpayer seeking an exemption must still establish—as the appraisal district concedes Ms. Johnson has here—that the home for which she seeks the exemption is her "principal residence." *Id.* It goes without saying that one cannot have more than one principal residence.

Third, but for its limitation to "this section," Section 11.13(h)'s prohibition against homeowners spreading exemptions among multiple residences would have barred Ms. Johnson from obtaining the exemption she seeks in this case. So long as Section 11.13(h) remains in its current form, no recipient of a Section 11.13 exemption may obtain an exemption on more than one home—even a married person living apart from his or her spouse.

Finally, "[t]he Legislature is adept at qualifying its tax exemptions." *Tex. Student Hous. Auth.*, 460 S.W.3d at 144. If it wishes to preclude Ms. Johnson and similarly situated disabled veterans from receiving residence homestead exemptions, we trust it will amend the statute.

## IV. Conclusion

The analysis of whether Ms. Johnson is entitled to the Section 11.131(b) exemption should begin and end with the statute's plain text. When, as here, the Legislature supplies an express definition for a term the statute employs, the statutory definition displaces the term's historical or ordinary meaning, and we are bound to give that term the meaning the Legislature ascribed it. Ms. Johnson satisfies the express, unambiguous requirements of Section 11.131(b) and therefore is entitled to the benefit of the tax exemption for 100% disabled veterans. The court of appeals correctly concluded that Ms. Johnson's summary judgment motion should have been granted. We affirm the court of appeals' judgment.

Rebeca A. Huddle
Justice

**OPINION DELIVERED:** June 7, 2024

24